**CRAIG et al. v. PITTMAN & HARRISON CO.**
**(No. 395-3732.)**

(Commission of Appeals of Texas, Section B. April 18, 1923.)

1. **Pleading ⬅111—Procedure upon filing plea of privilege stated.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1903, as amended in 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903), prescribing the procedure on the filing of a plea of privilege, it is merely necessary for a nonresident defendant to file his plea by appearance day, and thereupon under the law itself the case must be transferred to defendant's home county unless notice of a controverting affidavit be filed by plaintiff, in which case a real issue is presented which must be tried according to law.

2. **Justices of the peace ⬅61—Justice court held to lose jurisdiction of defendant on filing plea of privilege and could only enter order transferring cause.**

Where a nonresident defendant sued in justice court filed a plea of privilege to be sued in his own county, the justice court lost jurisdiction of defendant, and, in the absence of a controverting affidavit, had jurisdiction only to enter an order transferring the case to the county of defendant's residence under Vernon's Sayles' Ann. Civ. St. 1914, art. 1903, as amended in 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903).

3. **Execution ⬅172(3)—Judgment creditor indispensable party in suit to enjoin levy.**

Where a railroad company obtained a judgment for undercharges which was void because entered in disregard of a plea of privilege filed by defendant under Vernon's Sayles' Ann. Civ. St. 1914, art. 1903, as amended in 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903), the railroad company was an indispensable party to a proceeding to enjoin the sheriff and the justice rendering the judgment from levying execution to enforce such judgment.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action for an injunction by the Pittman & Harrison Company against W. B. Craig and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (234 S. W. 1112), and defendants bring error. Reversed and remanded, with directions in accordance with the recommendation of the Commission of Appeals.

Leake & Henry, of Dallas, and McReynolds & Hay, of Sherman, for plaintiffs in error.

G. C. Harney, of Sherman, for defendant in error.

POWELL, J. For a statement of the nature of this case, we quote from the opinion of the Court of Civil Appeals as follows:

"This was an action for injunction instituted by appellee against appellants in the trial court [district court of Grayson county]. From a judgment for appellee appellants have appealed.

"The case is submitted upon the following agreed statement of facts:

"'(1) The Pittman & Harrison Company, plaintiff herein, is a corporation, incorporated under the laws of the state of Texas, and has its principal office and place of business in the city of Sherman, Grayson county, Tex., and is a mercantile corporation engaged principally in the wholesale grain business. The defendant W. B. Craig is sheriff of Grayson county, Tex., and the defendant S. J. Barnett is a duly elected, qualified, and acting justice of the peace of precinct No. 1 of Dallas county, Tex., and resides in said county.

"'(2) That on the —— day of December, 1918, the St. Louis, Iron Mountain & Southern Railway Company, a corporation, instituted suit before S. J. Barnett, as justice of peace, against Pittman & Harrison Company to recover certain items of undercharge on shipments of grain made by Pittman & Harrison Company en route over the line of the St. Louis, Iron Mountain & Southern Railway Company, the amount sued for aggregating $169.30. Citation served in said suit was returnable to the January term, 1919, of said justice court of precinct No. 1, Dallas county, Tex.

"'(3) Prior to the return day in said suit the defendant Pittman & Harrison Company filed a plea of privilege duly verified in statutory form pleading its privilege to be sued in justice court of precinct No. 1, Grayson county, Tex., the precinct and county in which said Pittman & Harrison Company had its domicile. No controverting affidavit was ever filed in said suit by the St. Louis, Iron Mountain & Southern Railway Company, plaintiff therein. No action was ever taken on said plea of privilege by said S. J. Barnett, justice of peace of precinct No. 1 of Dallas county, Tex., and no order was entered by him in said suit either overruling or sustaining said plea of privilege at the January term, 1919, or any time thereafter.

"'(4) After the expiration of the January term, 1919, of said justice court and at a regular court day of the February term of said justice court, judgment was rendered in said suit in favor of the plaintiff, the St. Louis, Iron Mountain & Southern Railway Company, against the defendant therein, Pittman & Harrison Co., for the sum of $169.30, together with costs of suit and interest thereon at 6 per cent. per annum from date of judgment. Said judgment has never been appealed from, modified, or set aside.

"'(5) Execution was duly issued on said judgment directed to the sheriff or any constable of Dallas county, Tex., within one year after the rendition of same. Said execution was returned by constable of precinct No. 1, Dallas county, Tex., unsatisfied; no property of the defendant, Pittman & Harrison Company, being found in Dallas county subject to execution.

"'(6) After the return of said execution, and on the 18th day of February, 1920, an alias execution was issued on said judgment directed to the sheriff or any constable of Grayson county, Tex., commanding said officer to make the

amount of said judgment out of the goods and chattels of the defendant Pittman & Harrison Company. That said officer was proceeding to levy said execution upon the property of Pittman & Harrison Company when restrained by the writ of injunction issued out of the district court of Grayson county, Tex., on February 21, 1920, as set out in original petition filed herein by Pittman & Harrison Company against W. B. Craig and S. J. Barnett, defendants.

" '(7) The plaintiff in the original suit. the St. Louis, Iron Mountain & Southern Railway Company, has not been made a party to the injunction proceeding, the parties thereto being W. B. Craig in his capacity as sheriff of Grayson county, and S. J. Barnett in his capacity as justice of peace of precinct No. 1, Dallas county, Tex. Said railway company is a foreign corporation, and has no agent representing it in the state of Texas.' "

Upon a trial in the district court the collection of this judgment was permanently enjoined. This judgment of the trial court was affirmed by the Court of Civil Appeals at Dallas. See 234 S. W. 1112.

In passing upon the controlling questions upon this appeal, the Court of Civil Appeals, speaking through Judge Dexter Hamilton, says:

"By their first and second assignments of error the appellants say that the permanent injunction was erroneously granted, first, because the judgment of the justice of the peace under which execution was issued was not void, but, at most, merely voidable and subject to be set aside only upon appeal or certiorari therefrom; and, secondly, that the judgment was a binding one because the defendant in that case (appellee in the instant case) forfeited whatever rights it may have had under its plea of privilege by its failure to call the justice of the peace's attention to the plea of privilege at the term of court at which it was filed.

"That the judgment was absolutely void is not doubtful to us. The effect of filing the plea of privilege was to make prima facie proof of defendant's right to have the case transferred. The filing of the plea operated to preclude any other proceedings until after it had been disposed of in the manner provided by the statute. No contest having been filed by the adverse party, and the defendant neither having waived nor abandoned the plea, it was the duty of the court to sustain it. The only valid order which could have been entered would have been that transferring the case. All further proceedings were beyond the power of the court in the absence of a contest and notice thereof to defendant according to statutory requirement. Brooks v. Wichita Mill & Elevator Co., 211 S. W. 289; Bennett v. Rose Mfg. Co., 226 S. W. 143; Girvin v. Gulf Refining Co., 211 S. W. 331; Rice v. Broussard, 223 S. W. 323; Watson v. Watson, 223 S. W. 699; Petroleum Co. v. Britton, 230 S. W. 743.

"The view hereinabove expressed is supported by the decisions of this court, and, so far as we are able to ascertain, it conforms to the views of all other courts of Civil Appeals which have treated the question in any form, except the Beaumont court.

"It is contrary to the holding of the Beaumont Court of Civil Appeals in the case of Auds Creek Oil Co. v. Brooks Supply Co., 221 S. W. 319. The first-mentioned decisions give effect, we think, to the manifest legislative intent expressed in article 1903, Rev. Civ. Stats., as amended in 1917, while the other ignores such legislative intent and misapprehends the purpose clearly sought to be attained by the enactment.

"The judgment of the justice of the peace being void, then, under well-settled authority, its enforcement could be restrained by enjoining execution. Heath v. Layne, 62 Tex. 686."

The Supreme Court granted a writ of error because of the conflict between the decision of the Court of Civil Appeals in the case at bar and the decision of the Court of Civil Appeals at Beaumont in the case of Auds Creek Oil Co. v. Brooks Supply Co., 221 S. W. 319.

We have carefully reviewed the authorities, not only those cited by the Court of Civil Appeals, but numerous others from all sources, and especially Shepard's Citations, and we think Judge Hamilton, in the language just quoted, has correctly decided this case. Except for the opinion of the Court of Civil Appeals at Beaumont heretofore referred to, we have found no case contrary to the views of the Court of Civil Appeals herein. There may be some in very recent months, but we have not found them. We do find cases from all the Courts of Civil Appeals except that of the Third District at Austin and all of these cases are persuasively in line with the decision in the instant case. We do not find that the Austin court has passed upon the question either way.

One of the earlier cases directly in point, and cited by Judge Hamilton, is that of Brooks v. Elevator Co., 211 S. W. 288, by the Court of Civil Appeals at Amarillo. The opinion in the case just cited was written by Chief Justice Huff, and we quote from it as follows:

"The defendant in error, Wichita Mill & Elevator Company, sued plaintiff in error, John H. Brooks, in the county court of Wichita county, for goods sold and delivered to plaintiff in error amounting to the sum of $406, alleging that Brooks in writing agreed to pay the indebtedness in Wichita county. The petition was filed June 20, 1917. On August 2, 1917, the plaintiff in error filed his plea of privilege to be sued in Cherokee county, Tex., setting up his residence in that county at the institution of the suit, when the service of the citation was had on him, and at the time of the filing of the plea, and not in Wichita county at either of said dates, alleging that he did not promise nor contract in writing to pay the alleged debt in Wichita county; also negativing the exceptions authorizing the suit in the county other than the residence of the defendant, as now authorized by our statutes, the plea being sufficient in form. The defendant in error did not controvert the plea filed by plaintiff in error by a sworn plea or otherwise. On the 3d day

of December, 1917, the court rendered judgment for defendant in error for the amount sued for, reciting in the judgment the appearance of the plaintiff therein, and that 'the defendant, though duly cited to appear to answer, came not, but wholly made default,' etc.

"The questions presented on this appeal are whether the court should have changed the venue upon the filing of the plea upon defendant in error's failure to controvert the plea, or whether the plaintiff in error waived his plea by failure to present it to the court and urge that the venue be changed, and whether the court, with the plea on file, could enter a default judgment.

"At the time the petition was filed, June 20, 1917, the amendment of article 1903, R. C. S., by 35th Leg. 1917, General Laws, p. 388 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903), was then in effect. The act went into effect 90 days after adjournment, which occurred on the 21st of March, 1917. This gave full 90 days before the institution of the suit, and that act was then in force, and will govern the procedure with reference to the plea of privilege in this case. By the amendment a radical departure from the original practice and procedure is apparent. It is manifest when the former amendments are taken into consideration that it was the evident purpose of the Legislature to abolish the strict rules that originally prevailed with regard to pleas of this character. Sustaining the plea now does not abate the suit as formerly, but simply changes the venue. Stevens v. Polk County, 58 Tex. Civ. App. 153, 123 S. W. 618; Hickman v. Swain, 106 Tex. 431, 167 S. W. 209. The first part of article 1903, as amended, is in words the same as it was under the amendment by the Thirtieth Legislature (chapter 133), but has added thereto making the filing of the plea prima facie proof of the right to a change of venue by the defendant in the absence of a controverting affidavit or plea, and in which case the court must note on the contest an order setting a day for the trial thereof, and give to the defendant 10 days' notice before such trial. Under articles 1832 and 1833, when a plea of privilege is sustained, it is provided thereby that the case shall be transferred by the court to the county having jurisdiction. Before the present amendment it was necessary for the defendant aliunde his plea by evidence to prove his right to be sued in the county of his residence. Upon such proof it was the duty of the court to enter the proper order. Under the statute as it now reads the plea, when 'filed,' is prima facie proof of defendant's right to a change of venue. The duty of the court is to enter the order, and in fact he has no power to enter any other order or judgment unless a controverting plea is filed; then the court must note thereon the time for hearing on the plea, of which the defendant must have 10 days' notice.

"It is manifest, we think, that the statute contemplates, after the defendant has made prima facie proof of his right, that he is not required to be present until he receives notice of a contest and of the order setting a day for hearing thereon. If no contest is filed he has established his right, and the court no longer has jurisdiction over his person, but it is with the court in a different county. Under the amendment the filing of the plea is both an appearance for the purpose of the plea and proof of the rights asserted. Formerly the mere filing was not proof, and if not presented and proof offered thereon it was a waiver. It seems to us this formality is now dispensed with, and the decisions to that effect under article 1910 are not applicable. We believe the following cases will support the view above expressed: Ray v. Kimball, 207 S. W. 351; Murphy v. Dabney, 208 S. W. 981; Lucid v. McDowell, 206 S. W. 203. The caption of the act, amending article 1903, also suggests, we think, that it was the purpose to change the practice or procedure as formerly established. The caption recites that it was an act to amend the article 'so as to render a verified plea of privilege prima facie proof of the right of the defendant to change of venue and providing for procedure thereon.'

"The various acts of the Legislature evidence an intense legislative purpose to secure to the defendant the right to be sued in the county of his residence. We believe the courts ought to lend a willing mind to such rights, and to secure to him the right so clearly conferred upon him and give to the statutes a liberal construction to effect that purpose. We do not think the trial court had jurisdiction over the person of plaintiff in error when he filed his sworn plea, which was uncontroverted, and hence could not render a default judgment. He was not in default to a court that had no jurisdiction over his person. He had done all the law required him to do when he filed his plea to be sued in his own county. He had both objected to the jurisdiction and proved his right. The court could make but one order, and that was to transfer the case to the proper county. Neither in this case do we think he was required to set up that he had a meritorious defense in order to secure a change of venue. He is not asserting an equitable right, but a statutory right, one given him by the law. Merchants, etc., v. First State Bank, 192 S. W. 1101(3); Browne v. Walker, 206 S. W. 859. We think the court was in error in rendering judgment by default, and the same will be reversed and remanded, with instructions to set aside the judgment and to change the venue to Cherokee county, Tex., under the statutes providing for such change when the plea of privilege is sustained."

Prior to 1907 it was common knowledge among lawyers that the preparation of the plea of privilege was almost a Herculean task and was tremendously cumbersome, to say the least of it. Not only so, but when it was heard by the court the case was dismissed if the plea was sustained. In order to remedy the former evil, the Legislature in 1907 passed what was article 1903 of Vernon's Sayles' Civil Statutes of Texas of 1914, reading as follows:

"A plea of privilege to be sued in the county of one's residence shall be sufficient, if it be in writing and sworn to, and shall state that the party claiming such privilege was not, at the institution of such suit, nor at the time of service of such process therein, nor at the time of filing such plea, a resident of the county in which such suit was instituted, and shall state

the county of his residence at the time of such plea, and that none of the exceptions to exclusive venue in the county of one's residence mentioned in article 1830 or article 2308 of the Revised Statutes exist in said cause."

Another portion of this same act of 1907 provided that when a plea of privilege be sustained the case should be transferred to the proper court in the county of the defendant's residence and not dismissed as under the former rules. The articles providing for a transfer rather than a dismissal are still the law and were referred to by Chief Justice Huff as heretofore shown. But article 1903, as passed in 1907, was still further amended in 1917, so as to read now as follows:

"A plea of privilege to be sued in the county of one's residence shall be sufficient, if it be in writing and sworn to, and shall state that the party claiming such privilege was not, at the institution of such suit, nor at the time of the service of such process thereon, nor at the time of filing such plea, a resident of the county in which such suit was instituted and shall state the county of his residence at the time of such plea, and that none of the exceptions to the exclusive venue in the county of one's residence mentioned in article 1830 or article 2308 of the Revised Statutes exist in said cause; and such plea of privilege when filed shall be prima facie proof of the defendant's right to change of venue. If, however, the plaintiff desires to controvert the plea of privilege, he shall file a controverting plea under oath, setting out specifically the fact or facts relied upon to confer venue of such cause on the court where the cause is pending. Upon the filing of such controverting plea the judge or the justice of the peace shall note on same a time for a hearing on the plea of privilege; provided, however, that the hearing thereon shall not be had until a copy of such controverting plea, including a copy of such notation thereon, shall have been served on each defendant, or his attorney, for at least ten full days exclusive of the day of service and day of hearing. If the parties agree upon a date for such hearing it shall not be necessary to serve the copy above provided for. Either party may appeal from the judgment sustaining or overruling the plea of privilege, and if the judgment is one sustaining the plea of privilege and an appeal is taken, such appeal shall suspend the transfer of the venue and a trial of the cause, pending the final determination of such appeal." Vernon's Ann. Civ. St. Supp. 1918, art. 1903.

[1] It will be observed that the act of 1917 re-enacted the very provisions of the same article of the act of 1907, but adds to it materially. The act of 1907 was a great help to people sued out of the county of their residence. It simplified materially the preparation of the plea of privilege by the attorney. But, under that act, no other evil was corrected. It was still necessary to prove the facts set up in the simplified plea of privilege and attend court and move a hearing, even though the plaintiff had filed no controverting plea and knew in fact that he could not hold the defendant in case of a contest. That being true, it frequently happened that it was cheaper for a litigant to pay an unjust claim, in whole or in part, than to employ counsel, have him make the proof of the facts alleged in the plea of privilege, and attend court in a distant county. For instance, let us suppose a citizen of Orange, Tex., filed suit in Orange against a citizen of El Paso for some $200. Under the law before the Act of 1917 was passed, the El Paso citizen was under the duty of employing counsel to prepare the plea of privilege, gather the proof in support thereof, get that proof before the court, and go to Orange to present the plea and have it sustained. This was necessary even though the plaintiff did nothing and had no plea he could present to hold this El Paso defendant in the court at Orange. It is easy to see that it would cost about $200 for the El Paso defendant to hire an attorney to do these things. Confronted with such an expense, the defendant might very reasonably decide to pay most of the $200 claim, even though unjust, rather than continue in a lawsuit with nothing to gain or save by going ahead therewith.

We think the Legislature realized this tremendous evil and passed the act of 1917 so as to require nothing more of a defendant, in the absence of a controverting affidavit provided for in the statute, than the filing of his plea of privilege also defined in the statute. In other words, the nonresident defendant in Texas can file his plea by appearance day and dismiss the case from his mind, knowing that, under the law itself, the case must be transferred to his home county unless, and unless only, he or his counsel who prepared his plea of privilege be served with notice of a controverting affidavit filed by the plaintiff in response to his plea of privilege. If it had been the intention of the Legislature to require a defendant to keep up with the case in a distant county and see what was to become of his plea, we can see no reason for the provision requiring 10 days' notice of the controverting affidavit. As a matter of fact, this very statute requires the same character of notice of this controverting affidavit as the defendant is given in the usual citation in a new suit. In fact, the statute seems to contemplate that when the controverting plea is filed that the joining of this issue is in a sense a new suit of which the defendant is entitled to a notice of 10 days net.

If the plaintiff really has a bona fide reason for trying to sustain the jurisdiction in the original court, he certainly can have no objection to filing a controverting affidavit setting it up. And, when that is done, that will be soon enough to cause the defendant to employ counsel to make a long trip and

conduct a contest in court. Until the controverting affidavit is filed, there is no issue for the court to decide. The law itself directs the judgment the court must enter. But, when the controverting affidavit is filed, a real issue is joined. When that is true, then there would be real reason for the employment of counsel to present the defendant's side in court and see that the issue then joined be tried fairly and according to law.

[2] This act of the Legislature is most salutary. The construction we have given it can result in no injustice or even serious inconvenience or appreciable expense to any party plaintiff in any court. Not only so, but our construction certainly saves defendants a lot of expense and inconvenience in all cases where the plaintiffs know so well that they cannot sustain jurisdiction that they do not care to file the controverting affidavit provided by this statute. We think this justice court at Dallas lost jurisdiction of defendant in error when its plea of privilege was filed, and, until a controverting affidavit be filed, the only jurisdiction it had was to enter an order transferring the case to Sherman. The defendant in error had a perfect right to wait for its case to be transferred to Sherman until it had the notice required by the statute that the plaintiff had filed a controverting affidavit to its plea of privilege. Not having received any such notice, the defendant in error was doubtless very much surprised to be confronted suddenly, by the sheriff of Grayson county, with an execution threatening to levy upon its property for the payment of a judgment so illegally entered. Instead of transferring the case to Sherman, as by law provided, the justice of the peace ignored the statute under discussion and entered default judgment. After filing its plea of privilege, the first news the defendant had from the court at Dallas was this visit from the sheriff. The plaintiff in the justice court postponed any execution to Grayson county for at least a year. We think it clear that any further effort to levy execution under this judgment should have been enjoined.

The Court of Civil Appeals at Beaumont, in the case already referred to, cites no authority whatever bearing date subsequent to the passage of the act of 1917 which sustains that court's construction of that statute. In fact, the court makes no attempt to cite any cases or statutes. It handles the matter very briefly, merely contenting itself with saying, in the main, that although the plea of privilege is prima facie proof entitling the defendant to a transfer of its case, it is still necessary for the defendant to present this proof and have the plea passed on. We can see no legitimate reason for requiring a defendant, living perhaps clear across the state, to present a plea to a court and have the court pass upon it when the law itself expressly provides that the plea when filed entitles the defendant to a transfer in the absence of a controverting affidavit from the plaintiff. When no controverting affidavit is filed, there is no issue to be passed upon. The court is merely required to enter the very order provided by the statute itself. We can see no reason in the world for adding anything to this statute. If the statute had provided that this plea, when filed and presented to the court, should have a certain effect, then the construction of the court at Beaumont would be correct. But the Legislature employed no such language. They said the plea should have this effect when "filed." We do not feel that the courts are authorized to add to this statute further provisions which the Legislature itself did not employ. Especially is this true when, by doing so, the courts would largely destroy the beneficial effects of this statute. The relief sought to be provided by the Legislature is perfectly clear. This is a very unusual statute in that it contains detailed provisions relative to procedure. The language the statute employs is plain and unequivocal. The intention of the Legislature is manifest. That being true, we see no reason why the statute should be crippled, as we think would be the case if the construction of the Beaumont court should be upheld.

The statute under consideration is specific legislation affecting one particular plea. In so far as it may be inconsistent with former general laws and rules announced by the courts, it must replace them. This plea protects a most important right and, where the legislative intent is clear, as we think is the case here, we feel that the courts should not place a stumbling block, by a process of implication, in its future pathway and thereby deny the people of this state the full measure of relief the Legislature, in its wisdom, sought to confer upon them.

In some respects the statute under construction in the instant case resembles the statutes of our state with reference to an answer by a garnishee. In the case of Surety Co. v. Bernstein, 101 Tex. 189, 105 S. W. 990, the surety company, garnishee, filed an answer. It resided in Austin and took no further notice of the proceedings in Kaufman. It was contended that the company waived its right to be sued in Travis county, under those circumstances. But our Supreme Court, speaking through Judge Williams, said not, in this language:

"We therefore hold that the Court of Civil Appeals was in error in holding that plaintiff waived its privilege of having the controversy tried in Travis county. It follows that plaintiff was not required to take notice of the unauthorized proceedings in Kaufman county. Having filed a complete answer which entitled it to a discharge, the statute gave it the right to have any controversy arising upon it, tried in Travis county and to notice of any further proceedings; and laches is not imputable to it

for its failure to appear and meet the issue in Kaufman county."

The other points raised in the application, with the exception hereafter noted, have been decided correctly by the Court of Civil Appeals, as we view it.

The exception just mentioned is with reference to the contention of counsel for plaintiffs in error that—

"The fact that the plaintiff in execution is a nonresident does not dispense with the rule that no final judgment can be entered in any cause without the presence in the suit of the only party having an interest in the subject-matter."

In connection with this contention, it will be remembered that the railway company, a nonresident corporation with no agent in Texas, was the sole beneficiary in the judgment being enjoined. Said company had no notice of this suit and no opportunity to show cause, if any it could show, as to why the officers in Texas should not be permanently enjoined from collecting its judgment. But, in spite of these facts, the district court made its temporary injunction permanent and forever restrained the officers from proceeding any further under process already issued and the justice of the peace, in whose court the judgment was rendered, and his successors, from ever again issuing any further process attempting to collect this judgment.

In passing upon the contention just set out, the Court of Civil Appeals said:

"It is made to appear that St. Louis, Iron Mountain & Southern Railway Company is a foreign corporation which has neither an agent nor an office in Texas. An injunction proceeding is strictly in personam. It cannot operate against a defendant beyond the jurisdiction and reach of the court. No effectual or valid service upon the railway company could have been obtained. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. No judgment could have affected it. It is true, as contended by appellants, that it was the only party adversely interested in the justice of the peace's court judgment, and, had it been within the jurisdiction of the court, then it doubtless would have been a necessary party to this action. But, since it was beyond the reach of the equity power of the court, as we understand the rule, an injunction could not have issued against it in any event. 22 Cyc. 785. Making it a party, therefore, would have been a futile act. So, if appellants' contention should be sustained, then appellee would be without a remedy against the wrongful acts of appellants about to be performed in the exclusive interest of, and at the sole instance of, the railroad company. But equity 'regards substance rather than form' and 'will not suffer a right without a remedy.' It would therefore be unsound and inequitable to deny the relief on the ground that the wrong was being committed by persons who were obtaining no benefit from it and who were acting for a party upon whom no valid service could be had, and against whom no injunction could issue. We accordingly overrule the third assignment of error."

[3] That this railway company was an indispensable party to this proceeding does not, in our judgment, admit of doubt. See section 81, p. 82 (9th Ed.) of Story's Equity Pleadings. The relief here sought is, in effect, a destruction of a property right belonging to this railway company in the state of Texas. The judgment asked to be vacated originated in the Texas courts at the instance of this company. Its enforcement was to be had in Texas by Texas officers. The courts of Texas have authority to bring this plaintiff in execution into the state of Texas and enter a judgment against it affecting the enforcement of said judgment within said state or vacating the same for good cause shown. The full measure of relief prayed for herein does not go beyond these points.

Article 1869 of Vernon's Sayles' Revised Civil Statutes of Texas of 1914 provides one method of notice to nonresident defendants which is available here.

The defendant in error should make the railway company a party defendant, asking that it be given notice of the time of another trial of the cause, when it will appear and show cause, if any it can, why the judgment in question should not be declared void and its further enforcement permanently enjoined. The permanent injunction should issue if, upon such another trial of the case, the facts now before us remain unchanged.

For the reason just discussed, we think the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former, with instructions to set aside its permanent injunction and to dismiss the case entirely if the St. Louis, Iron Mountain & Southern Railway Company, aforesaid, shall not be made a party to it within such time as the trial court may determine to be reasonable. We so recommend.

CURETON, C. J. Judgments of the trial court and Court of Civil Appeals both reversed, and cause remanded to the district court, with instructions.