CEMCO, INC., Appellant,

v.

WORLD WIDE INVESTORS et al.,
Appellees.

No. 5148.

Court of Civil Appeals of Texas,
Waco.

Nov. 9, 1972.

David A. Ives, William L. Neary, Dallas, for appellant.

Jennings, Montgomery & Dies, Graham, C. G. Whitten, Pope, Dickenson, Batjer & Glandon, R. M. Rutledge, O. Henry Young, Jr., Abilene, Thornton & Thornton, Olney, George W. Svanas, Odessa, and Charles O. Shields, Dallas, for appellees.

## OPINION

JAMES, Justice.

This is a venue matter, the disposition of which turns on Subdivision 4 of Article 1995, Vernon's Annotated Texas Civ. Statutes. Plaintiff-Appellant Cemco, Inc., brought this action in Dallas County against 26 individual Defendants [1] alleged to be partners or joint venturers, in which 17 of the Defendants filed Pleas of Privilege, all of which were duly controverted by Plaintiff-Appellant Cemco. The trial court after an extensive hearing sustained the pleas of privilege of 12 of the Defendants, and held in abeyance the pleas of privilege of the remaining 5 Defendants. Plaintiff Cemco appeals from this order sustaining the pleas of privilege of the 12 Defendants on three points of error, the first point being that the "trial court erred in sustaining Defendant-Appellees' pleas of privilege since it was shown that venue is proper in Dallas County under Subdivision 4 of Article 1995, V.A.C.S." We sustain Plaintiff-Appellant's first point and reverse and render the trial court's order.

Although the record is voluminous, we will discuss only those facts which we deem pertinent to explain the reasons for our judgment.

1. The 26 individual Defendants sued by Plaintiff-Appellant Cemco are: F. L. Livingston, Joe B. Barnard, J. T. Westmoreland, Sam H. Plummer, Kim T. Polk, Don Pierson, Tom Danaher, R. E. Thornton, Vincent Murphy, Dan Fergus, F. Keith Oehlschlager, Darrell Knight, Bill Sears, William D. Kelly, Robert Grisham, T. R. Culver, Jr., T. R. Culver, Sr., R. C. Culver, E. L. Brahaney, W. Irby Fox, J. S. D. Langford, Susan Langord, R. C. Buckmiller, George P. Shropulos, Megargel Drilling Co., Inc., and Murphy Bros. Chevrolet Company, a partnership. In addition to the above named 26 Defendants, Cemco sued "World Wide Investments also known as World Wide Investors" which was alleged to be a partnership or joint venture. Also a class action was brought against the named Defendants "as representatives of all others similarly situated."

The organizer or promoter of the business venture out of which this suit arose was Defendant-Appellee Don Pierson who was formerly Chairman of the Board of Abilene National Bank in Abilene, Texas. The venture called for the securing of a ship and the equipment to install two radio broadcasting stations therein for the purpose of carrying on the business of commercial radio broadcasting off the coast of England. This is what is called a "pirate radio ship" or "pirate radio station." Prior to the instant venture, Pierson had had recent experience in promoting a similar venture called "Radio London." The Defendants are primarily business and professional men, most of whom lived in various counties of Texas, many of whom were strangers to each other in the early phases of the venture. Pierson sought to raise $750,000.00, and under his leadership and mainly through his promotional efforts each of the individual Defendants either put up money or rendered services, and some did both, in behalf of the venture. The Defendants were told that the money they put up would be used to purchase a ship and the necessary radio broadcasting equipment so as to get the commercial broadcasting business under way; that three corporations would be organized as follows: Lassiez-Faire, Ltd., a Bahamian Corporation; Vizcaya Inc., a Panamanian Corporation; and Pier-Vick, Ltd., an English Corporation. Vizcaya would own the ship from which the radio stations would operate, Pier-Vick would sell the advertising and operate the broadcasting business, and Lassiez-Faire would be the parent corporation and would own all the stock in the other two corporations. The Defendants who put up money were told that they would be given notes bearing 4% per annum interest, to be issued by Lassiez-Faire, the parent corporation, when it was organized, and all profits of the business would be applied toward payment of the notes until they were paid in full. Then the holders of the promissory notes were to receive shares of stock in Lassiez-Faire in the ratio of 1% of the outstanding stock in the corporation for each $15,000.00 put up.

This would result in those putting up money ultimately owning 50% of the shares of Lassiez-Faire. The remaining 50% of stock would be owned by Pierson and others of the Defendants who provided services or were directly engaged in the operation of the business. This latter group who provided services were called the "talent group," and included such Defendants as Dan Fergus, an attorney, and Darrell Knight, a certified public accountant, each of whom rendered professional services. Also Bill Vick (who was not a party to the suit) conducted the operations of the broadcasting business in England, and was a member of the "talent group."

Pierson caused the money put up to be deposited in an Abilene, Texas, bank in an account called "World Wide Investments," and most of the disbursements of the put-up money was made from this account.

Pierson, accompanied by his attorney and others of Defendants, made a trip to Miami, the Bahamas, and London, for the purpose of purchasing a ship and radio broadcasting equipment, and for organizing the three foreign corporations which had been contemplated. He first bought a ship at Miami. Then he caused to be purchased the radio broadcasting equipment from Plaintiff-Appellant Cemco, Inc. His financial arrangements to purchase the radio equipment consisted of having four of the Defendants (Polk, Barnard, Westmoreland and Plummer) to sign a promissory note payable to Cemco dated February 10, 1966, in the principal amount of $237,000.00. The radio equipment cost a total of $348,180.00 which was secured by a written conditional sale contract dated February 10, 1966, executed by the same four Defendants who signed the promissory note. The note was designed to cover a portion of the purchase price of the equipment. Pierson paid $78,000.00 cash down on the equipment (including one $14,000 "insufficient funds" check which was never paid), and the balance of the purchase price was payable in semi-annual installments.

Pierson refused to tell Plaintiff-Appellant Cemco the names of the people he rep-

resented, when he purchased the equipment, and refused to sign the note and conditional sale contract personally. Cemco was furnished financial statements on Polk, Barnard, Westmoreland and Plummer, and sold the equipment on the strength of the note and contract signed by these four individual Defendants, together with the cash down payment made by Pierson.[2]

After the radio equipment was installed by Cemco in the ship, it sailed for England to commence operations. The ship's mast fell down on the way from Miami to the Azores, there were some problems with the radio equipment, as well as other problems. As a result, Pierson remained in England for several months. From the record it does not appear that any of the three corporations were ever chartered or organized; however, be that as it may, it is definite that no notes were ever delivered to any Defendants who put up money, nor was any corporate stock ever issued to any of the Defendants.

Pierson had used up practically all the money that had been put up during the months he was in England, and no payments were ever made to Plaintiff-Appellant Cemco as called for by the note and conditional sale contract (other than the down payment hereinabove described). The venture being thus in financial difficulties, Pierson returned from England and a meeting was held of the persons interested in the venture at Abilene, Texas, beginning October 7, 1966. At this time those who had not been involved in management learned that the venture was in financial difficulty, and that the business could not be continued without more money being put up. As a condition to advancing additional capital, certain of the participants insisted on changes, including, among other things, a reduction of the interests of those who had not advanced cash, and other

changes not necessary to mention here. Some of the participants tried to negotiate with Cemco in an effort to postpone the due date of the first installment for a year; however, this was never worked out. The venture needed additional money in early 1967, and additional money was put up by some of the Defendants only after further adjustments to the interests of the various parties as well as further changes in the mechanics of managing the enterprise.

Plaintiff-Appellant Cemco filed this suit in Dallas County on September 25, 1970, against all the 26 individual Defendants hereinabove named; and in addition thereto "World Wide Investments, also known as World Wide Investors" was made a party Defendant. "World Wide Investments" was alleged by Plaintiff-Appellant to be a "joint venture, unincorporated association, partnership, or joint stock company" composed of all of the named individual Defendants. Plaintiff's First Amended Original Petition was composed of four counts. In Counts I and II, judgment was sought against Defendants Polk, Barnard, Westmoreland, and Plummer on the promissory note (payable to Cemco) and the conditional sales contract, respectively, plus other incidental relief. Then in Count III Plaintiff-Appellant Cemco alleged that all of the named Defendants were partners in a partnership or joint venture doing business under the firm name of "World Wide Investments," (alleging facts concerning the nature of the business), that the note and conditional sale contract were executed in behalf of all the Defendants and in furtherance of the partnership business, and sought judgment against all 27 Defendants on the note and conditional sale contract, and other incidental relief.

In Count IV Plaintiff-Appellant sought judgment in a class action against all other

---

2. Polk, Barnard, Westmoreland and Plummer were promised by Pierson that they would participate in the profits and receive shares of Lassiez-Faire stock in the same ratio as those who put up cash money. This was in return for the lending of their credit in signing the note and conditional sale contract to Cemco.

partners similarly situated to the named Defendants, for the same relief set out in Count III.

As stated above, a venue hearing was had, at the conclusion of which the trial court sustained the pleas of privilege of twelve of the Defendants by an order dated February 25, 1972, from which order Plaintiff-Appellant Cemco appeals.

Defendant Polk, one of the four Defendants who signed the note and conditional sale contract with Cemco, was alleged by Plaintiff-Appellant to be a resident of Dallas County, and proof was made that he was a resident of Dallas County. (One other Defendant, George P. Shropulos, was also alleged by Plaintiff to be a resident of Dallas County; however, no proof was made at the venue hearing as to his residence.)

On November 24, 1970, Defendant Polk filed a Motion for Summary Judgment on the ground that he had theretofore (in 1968) been discharged in bankruptcy by a U. S. District Court, which motion was opposed by Plaintiff-Appellant Cemco; a hearing was had after which the trial court granted a Summary Judgment that Plaintiff-Appellant Cemco take nothing against Defendant Polk. This Summary Judgment in Polk's· favor was dated February 5, 1971, several months prior to the hearing on the pleas of privilege appealed from herein.

Appellant's first point contends that venue is properly laid in Dallas County under subdivision 4 of Article 1995, V.A.T.S., and that the trial court therefore erred in sustaining Appellees' pleas of privilege. On the other hand, Appellees in effect contend that Polk was the only resident (Dallas County) Defendant, and since he was no longer in the suit at the time of the venue trial, that there was no resident Defendant upon which to base venue under Subdivision 4. We disagree with Appellees' contention and sustain Appellant's first point.

The pertinent portion of Subdivision 4 reads: "If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides."

To maintain venue under Subdivision 4, Article 1995, in the county of suit, where there is a resident defendant and one or more nonresident defendants, the plaintiff has the burden of: (1) alleging a joint cause of action against the resident and nonresident defendants, or a cause of action against the resident defendant so intimately connected with the cause of action alleged against the nonresident defendants that they may be joined under the rule intended to avoid a multiplicity of suits; (2) proving by independent evidence that the resident defendant resides in such county; and (3) proving that the plaintiff has a cause of action against the resident defendant. Stockyards National Bank v. Maples (Comm.App.1936) 127 Tex. 633, 95 S.W.2d 1300, opinion adopted by the Supreme Court; Ladner v. Reliance Corporation (Sup.Ct.1956) 156 Tex. 158, 293 S.W.2d 758; Hospital Sciences v. Medical Computer Systems, Inc. (Waco CA 1972) 482 S.W.2d 699. The allegations of plaintiff's petition are sufficient proof under Subdivision 4 to show the joint cause of action against resident Defendant Polk and the other (nonresident) Defendants, that is, to show that the nonresident Defendants have been properly joined as parties to Plaintiff-Appellant Cemco's suit. See Ladner v. Reliance Corp., supra.

In other words, in the case at bar, Plaintiff-Appellant has alleged a joint cause of action (on theory of partnership) against Polk and the other (nonresident) Defendants, and has proved that Defendant Polk resides in Dallas County; therefore, the precise question that confronts us is whether or not the Plaintiff proved a bona fide cause of action against resident Defendant Polk. We believe the Plaintiff did meet this burden of proof.

At the outset, it should be noted that the summary judgment in favor of Polk is an interlocutory, nonappealable order, since Polk's phase of the case was not severed out of the lawsuit by order of the

trial court. See Pan American Petroleum Corp. v. Texas Pacific Coal and Oil Co. (Sup.Ct.1959) 324 S.W.2d 200. Since this summary judgment is not final, this means that Polk is still a resident Defendant in the lawsuit.

■ We believe the trial court acted improperly in acting upon Polk's motion for summary judgment prior to determination of the venue question, because by granting the summary judgment in Polk's favor he was to that extent trying the merits of the lawsuit, which if left undisturbed by us would unfairly prejudice and tamper with the venue rights of the parties. Stated another way, the trial court should first determine where the lawsuit is to be tried before actually trying the merits of the suit or any portion thereof.

We have been cited to no case or authority squarely in point with the instant problem, by either side, and we have found none. We therefore believe this precise question before us to be one of first impression; however, a review of pertinent authorities clearly points up the answer.

Rule 84, Texas Rules of Civil Procedure, as amended in 1962, provides in effect that the Defendant's pleadings "shall be heard in such order as may be directed by the court, special appearance and *plea of privilege and the practice thereunder being excepted herefrom*." (emphasis supplied). Prior to its amendment in 1962, the Rules of Civil Procedure provided, not only that pleas should be filed in due order of pleading, but also that they should be heard in that order under the direction of the court. It followed that ordinarily they would be determined in the same order; this was formerly a matter of express statutory words. See 46 Tex.Jur.2d, "Pleading," par. 235, p. 99 and the cases therein cited.

Polk's discharge in bankruptcy, upon which he based his entitlement to a summary judgment, is an affirmative defense or matter in avoidance. See Rule 94, TRCP.

■ The sole issue raised by the plea of privilege and the controverting affidavit is venue, not liability or the merits of the case. Consequently, defensive matters (such as Polk's discharge in bankruptcy) have no proper place in determining the question of venue. The defense is not available on the plea of privilege hearing to defeat venue in the county of suit. Negativing the prima facie cause of action established by the Plaintiff does not negative the "venue fact". It simply does not affect venue. See Dealers National Insurance Co. v. Rose (Waco CA 1965) 396 S.W.2d 535, no writ history, wherein similar language analogous to the foregoing in this paragraph was quoted with approval by our Supreme Court speaking through Mr. Justice Price Daniel in General Motors Acceptance Corporation v. Howard, 487 S.W.2d 708, by opinion dated October 21, 1972. (Here the Supreme Court affirmed the Beaumont Court of Civil Appeals opinion reported in 474 S.W.2d 929).

In *General Motors*, our Supreme Court also quoted with approval the following rule laid down by McDonald, Texas Civil Practice, vol. 1 at page 614:

"At the venue hearing there is no occasion to examine affirmative defenses to the plaintiff's claim, except so far as they may be inseparably involved in determining a venue fact. If the controverting affidavit brings the cause within a venue exception, the court will not on the venue hearing consider matters in abatement, the insufficiency of the petition to state an enforceable claim, or affirmative defenses."

■ While Polk's discharge in bankruptcy may constitute a defense to the suit on its merits, defenses and evidence which negate liability are not at issue in the plea of privilege hearing, where venue is the only issue. See Delta Western Transportation Corp. v. Plantation Foods, Inc., (Waco CA 1970) 455 S.W.2d 957, no writ history, syl. 2 and the cases therein cited. Also Janes Gravel Co. v. Stewart (Eastland CA 1954) 265 S.W.2d 874, no writ

history, wherein the court held that a plea in abatement was a defensive matter to the merits of the case and was not properly before the court upon a venue hearing, and that such plea in abatement had no place in the hearing of the plea of privilege, because it was not a venue fact. Also see Southwestern Investment Co. v. Allen (Sup.Ct.1959) 328 S.W.2d 866, a suit on a note, wherein payment was held to be an affirmative defense and not a venue fact. Earlier opinions of the Commission of Appeals, all adopted by the Supreme Court, bearing upon the question at hand, are: Craig v. Pittman & Harrison (1923) 250 S.W. 667, Galbraith v. Bishop (1926) 287 S.W. 1087, and Texas-Louisiana Power Co. v. Wells (1932) 48 S.W.2d 978.

In the light of the foregoing authorities, we believe the Plaintiff-Appellant met his burden to establish venue in Dallas County under Subdivision 4, Article 1995, V.A.T.S., and the trial court erred in sustaining the Defendants' pleas of privilege.

Judgment of the trial court is accordingly reversed and rendered.

Reversed and rendered.