**MERCHANTS' RECIPROCAL UNDERWRITERS OF DALLAS v. FIRST NAT. BANK OF CANADIAN et al. (No. 1119.)**

(Court of Civil Appeals of Texas. Amarillo. Feb. 21, 1917.)

1. INSURANCE ⟨⟩665(1)—ACTION ON POLICY—EVIDENCE—SUFFICIENCY.

In an action on a fire policy, testimony of a witness *held* not to show that defendant company complied with Acts 33d Leg. c. 109, authorizing contracts between individuals, firms, or corporations providing indemnity between each other for fire loss.

2. COURTS ⟨⟩170—COUNTY COURT—JURISDICTION—AMOUNT CLAIMED.

In an action in the county court on a policy of fire insurance, where the petition asked for judgment for $1,000, the amount of the policy, and further general and special relief, while it might have been construed as authorizing the recovery of interest in addition to $1,000 as a part of the judgment if the court had jurisdiction, it will be construed as a demand for judgment for $1,000, so that the county court had jurisdiction of the case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 427.]

3. APPEAL AND ERROR ⟨⟩302(1)—MOTION FOR NEW TRIAL—SUFFICIENCY.

Where defendant by his plea objects to the court's jurisdiction, this issue must first be determined before a hearing on the merits, so that assignments of error in overruling a plea to the jurisdiction will not be stricken because the motion for new trial and the proof thereunder did not show a defense to the cause of action declared upon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1744–1746.]

4. INSURANCE ⟨⟩629(1) — ACTIONS ON POLICIES—PLEADING.

That suit was instituted against defendant by name, alleging that it was doing an insurance business in the state of Texas, with an office and place of business in Dallas county, Tex., in the city of Dallas, with a person named as manager and attorney, upon whom service could be had was sufficient to show a legal liability by a legally existing association.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1575, 1584.]

5. PARTNERSHIP ⟨⟩41—ACTIONS ON POLICIES—UNORGANIZED COMPANY.

If defendant reciprocal insurance association was not organized under Acts 33d Leg. c. 109, and issued a policy when the law did not authorize it to do business, those acting in its name might be personally liable and should be sued individually at their places of residence, since a partnership cannot sue or be sued as such, but actions must be brought by and against the members of the partnership.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 56, 58, 59, 74.]

6. CONTRACTS ⟨⟩127(4)—INSURANCE ⟨⟩615, 618—ACTIONS—VENUE—AGREEMENT FIXING VENUE.

In view of Rev. St. 1911, art. 1911, authorizing an agreement to fix the venue of an action in a particular county, a provision in a power of attorney and agreement for the formation of a reciprocal fire insurance association that all suits on policies shall be brought in the county where the offices and business of the association are located was reasonable, and while the fact that a suit is instituted in a county other than that agreed upon will not defeat the policy or be a defense in bar of recovery thereon, upon a plea of privilege the agreement will be enforced by changing the venue.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 612; Insurance, Cent. Dig. §§ 1530, 1532–1534, 1536–1539.]

7. INSURANCE ⟨⟩646(1)—ACTION ON POLICY—EVIDENCE—BURDEN OF PROOF.

Where defendant reciprocal insurance association established its domicile and an agreement that actions against it on policies should be brought only in such domicile it then devolved upon the plaintiff to show that defendant was not such an organization as could then do business at that place or any other under the laws of the state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1645–1649.]

8. INSURANCE ⟨⟩618—ACTIONS—VENUE—RESIDENCE OF DEFENDANT—ASSIGNMENT AS AFFECTING VENUE.

In view of Rev. St. 1911, art. 1830, subd. 4, providing that the assignment of a chose in action will not entitle the subsequent holder to institute suit thereon in any other county than that in which the suit could have been prosecuted if no assignment had been made, the fact that a fire insurance policy had been assigned did not give the assignee the right to institute suit in a county other than that specified by the agreement of the assignor.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1536–1539.]

Appeal from Hemphill County Court; J. L. Jennings, Judge.

Suit by the First National Bank of Canadian and others against the Merchants' Reciprocal Underwriters of Dallas. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Fisher & Palmer, of Canadian, and Lively & Goggans, of Dallas, for appellant. Hoover & Dial, of Canadian, for appellees.

HUFF, C. J. The appellee National Bank, as assignee of the Gerlach Mercantile Company, sued the appellant insurance company, together with the Gerlach Mercantile Company, in the county court of Hemphill county, on a fire insurance policy. It is alleged that the Merchants' Reciprocal Underwriters of Dallas, Tex., were doing an insurance business in the state of Texas, with an office in Dallas county, Tex., in the city of Dallas, with Edward T. Harrison as manager and attorney, and upon whom service may be had. It is alleged that on or about the 6th day of April, 1916, the appellant issued a policy to the Gerlach Mercantile Company on a stock of merchandise, insuring against loss or damage by fire; that on the 8th day of April, 1916, the merchandise insured was totally destroyed, and that it was of the probable value of $40,000, and that the Gerlach Mercantile Company performed all of the conditions required of it by the terms of the policy and in due time, and on the date of the fire gave notice to the insurance company and proof of loss by fire, demanding payment of the sum of money evidenced by the policy,

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

whereby the insurance company became justly indebted, bound, and liable to pay unto the Gerlach Mercantile Company the sum of $1,000; that it failed and refused and still fails and refuses to pay that sum or any part thereof; that after the fire and the notice above set out the Gerlach Mercantile Company assigned and delivered to the appellee bank, for a valuable consideration, all of its rights, title, and interest in and to the policy, according to the terms and conditions thereof —and alleges that by reason of the guaranty of the Gerlach Mercantile Company it also became liable and bound to plaintiff for the amount of said policy, according to its face and reading, concluding with the following prayer:

"Wherefore, premises considered, plaintiff prays * * * that after a final hearing hereon it have judgment against the said defendants and of each of them for the sum of $1,000 and all costs of this suit, and for such other and further relief, general and special, in law and in equity, to which it may be justly entitled and in duty bound will ever pray."

In due time the Merchants' Reciprocal Underwriters filed its plea of privilege, alleging that it is an unincorporated voluntary association engaged in the business of interinsurance against loss by fire, whose residence, domicile, and office is located in the county of Dallas, state of Texas, and that Edward T. Harrison is the duly constituted and acting manager and attorney for the company, and duly authorized to represent and answer for it in the case. The plea properly alleges its domicile and residence in Dallas county and negatives its residence in Hemphill county, as required by the statutes, and contains the following further allegations:

"In further support of this plea of privilege, said defendant, the Merchants' Reciprocal Underwriters, represents that plaintiff's suit arises and grows out of and is based upon a certain instrument designated 'Agreement and Power of Attorney,' dated April 1, 1916 signed by the Gerlach Mercantile Company, by George Gerlach, president and manager, and delivered to said Merchants' Reciprocal Underwriters, a true and correct copy of which is attached hereto and marked Exhibit A, and also upon an insurance policy issued to the said Gerlach Mercantile Company by said defendant, the Merchants' Reciprocal Underwriters, under date of April 6, 1916, a true and correct copy of which policy is hereto attached, marked Exhibit B, and that said instruments expressly and specifically provide that all suits or actions against said Merchants' Reciprocal Underwriters arising or growing out of said instruments shall be brought and prosecuted in the courts of Dallas county, Tex., and not elsewhere, and that said contracts, according to their express terms and stipulations, are to be performed in Dallas county, Tex., and not elsewhere."

The prayer is that its plea of privilege be sustained, and that the cause of action be transferred to the county court at law of Dallas county, Tex.

The court heard the evidence on the plea of privilege and overruled the same. The appellant did not answer in bar to the cause of action, and judgment was rendered against it on the policy for $1,000, from which judgment this appeal is prosecuted.

[1] On the trial of the plea the appellants offered testimony of R. A. Belknap, who testified that Edward T. Harrison resides in Dallas, Dallas county, Tex., and was manager of the appellant company, and that the office of the company was in Dallas, Dallas county, Tex., and that they had no other office in the state, and that their domicile was in Dallas, Dallas county, Tex., and was so at the time of the trial. It was engaged in the business of insurance against loss by fire under the laws of 1913 (Acts 1913, p. 210); that it had no office or agent in Hemphill county; that none of the exceptions named in article 1830, Revised Statutes, applied to the company. On cross-examination this witness disclosed the fact that he had only been with the organization a short time, and was not able to say that it complied with the act of the Legislature, and that it was his belief that the company filed with the commissioner of insurance a statement in writing giving the name and title and office through which that firm did execute contracts. This witness' evidence is not, in our judgment, sufficient to show that the company complied with the statute. It, however, introduced an agreement or power of attorney between the Merchants' Reciprocal Underwriters and the Gerlach Mercantile Company reciting that there had been established at Dallas, Tex., a department or bureau, called the Merchants' Reciprocal Underwriters, where subscribers thereat may obtain reciprocal or interinsurance against loss by fire, and for that purpose the undersigned Gerlach Mercantile Company recites that it becomes a subscriber of the organization, upon the conditions and terms mentioned. It provided therein that insurance should be effected by and through Edward T. Harrison, of Dallas, Tex., acting as manager and attorney for subscribers at said underwriters, for the purpose of safeguarding the interest of the subscribers at said underwriters; there should be an advisory board of nine persons, which exercise general supervision and control over the affairs of the underwriters and over the disposal and investment of all funds belonging to it, and have such other and further duties and powers as are conferred by the agreement, providing for the election, notice, etc., of the advisory board; that the Gerlach Mercantile Company constituted and appointed Edward T. Harrison as its true and lawful agent and attorney in fact to solicit and accept or reject subscribers at said underwriters, insure property or any interest therein against loss or damage by fire in such terms and at such rates of premium as shall be determined by the advisory board, make, execute, issue, subscribe, and deliver policies of insurance in the name of the Merchants' Reciprocal Underwriters containing such terms, clauses, conditions, warranties, and

stipulations as to said advisory board shall seem proper, and setting out fully the method of transacting the business of insurance, collecting premiums, etc., authorizing him also to represent the subscriber in all suits or other legal proceedings by or against the underwriters, and generally all powers, privileges, and authority ordinarily invested in attorney in fact of a Reciprocal Fire Insurance Bureau, prescribing that 75 per cent. of all premiums received should be set apart by the advisory board as reserve, which shall be deposited in a state and national bank in Texas, providing for its investment and that all leases, savings and rentals to subscribers, taxes, legal charges, expenses of investing the reserve, and investigating and adjusting losses should be paid out of the reserve, providing that the Manager and Attorney shall keep an account of all moneys and premiums received by him from the subscriber and at the expiration of any policy issued to it, ascertain what portion of said premium, if any, had not been used, or set apart or disbursed for the purposes specified in the agreement, and that 30 days thereafter 50 per cent. of the amount which had not been used, set apart, or disbursed should be paid to it, and the other 50 per cent. should remain in the reserve to its credit as savings, and as soon as the aggregate of its savings equals the annual current premium on its policy then thereafter the entire portion of the annual premiums not used, set apart, or disbursed for the purposes therein specified should be returned to it as therein provided. It provided for creating a fund for paying expenses of business and conducting the business, salaries, office rents, etc., providing after certain notice the right of canceling the contract and that its liability was expressly limited to the amount of its annual premium stipulated in any policy of insurance issued to it by virtue of the contract, and its liability should not exceed in any event, either to subscribers or other parties, the amount of such premium, and upon payment of the premium all its liabilities of every kind and character should cease, and with the following provision in the contract:

"In all suits or legal proceedings in this state against said Merchants' Reciprocal Underwriters service of process may be had upon the commissioner of insurance and banking for the state of Texas or upon the manager and attorney for said underwriters both of whom are hereby designated, constituted, and appointed the true and legal agents of the undersigned to receive and accept for us such service of process, and service thereof upon either of said parties shall be accepted in all courts or proceedings as sufficient and binding upon the undersigned. * * * The office of said Merchants' Reciprocal Underwriters shall be located at Dallas, in the county of Dallas, state of Texas, and all suits or actions against said underwriters by the undersigned arising or growing out of this instrument or out of any policy of insurance issued by virtue hereof shall be brought and prosecuted in the courts of Dallas county, and not elsewhere. It is expressly agreed and stipulated that the said manager and attorney shall have no authority to act for the undersigned in any way outside of or beyond the purposes and stipulations of this instrument."

The policy issued to the Gerlach Mercantile Company was introduced, and was shown to be upon the stock of merchandise in the town of Canadian, Hemphill county, and among other provisions therein the following:

"The agreement and power of attorney and application executed by the insured and upon which this policy of insurance is granted and accepted are made a part hereof, to all intents and purposes as fully and effectively as if written verbatim into the face of this policy."

This policy was signed by the Merchants' Reciprocal Underwriters, Edward T. Harrison, manager and attorney. The appellant offered no evidence that the agreement and form of its policy was filed with the commissioner of insurance and banking of the state of Texas, or any certificate from that officer that the association had complied with the act.

[2] The appellant presents, first, a motion to this court to the effect that the case should be reversed and dismissed because the county court of Hemphill county had no jurisdiction over the subject-matter of the suit, and that on the face of the pleadings it was shown the action declared on exceeded the sum of $1,000. Under the authorities of this state we find some difficulty in determining just what the rule with reference to the question here presented is. In the case of Telegraph Co. v. Garner, 83 S. W. 433, the rule is tersely stated as follows:

"We are of opinion the whole law on the question is stated when it is said interest by way of damages is recoverable, whether specially pleaded or not, but the recovery can in no event exceed plaintiff's stated demand."

Also Railway Co. v. Addison, 96 Tex. 61, 70 S. W. 200, and a great number of other authorities.

If, under the rule above quoted the stated demand for $1,000 was all for which judgment could be rendered under the pleadings, as apparently held in the cases cited, the county court had jurisdiction of this case. It would appear, however, that that line of cases recognizing the above rule is not fully supported in the case of Railway Co. v. Fromme, 98 Tex. 459, 84 S. W. 1054. It is not expressly so stated in that case; yet the certificate therein shows that, because the stated demand in the petition was for only $95, the case was dismissed by the Court of Civil Appeals under the rule announced in the Garner Case. Nevertheless the Supreme Court held that judgment could have been rendered for that amount, plus 6 per cent. The prayer for interest in that case only asked for what the law allowed as damages. The prayer in this case is for what the law allows without calling it interest; that is, damage which the law, by judicial construction, has arbitrarily fixed for the compensation for the detention of money. We also call

attention to the recent cases of Railway Co. v. Albin, 185 S. W. 647, Railway Co. v. Mathews, 169 S. W. 1052, and Railway Co. v. Matthews, 188 S. W. 243. We have concluded, however, after considering the pleadings in this case, that it will fall under the rule announced by the Supreme Court in the case of Railway Co. v. `Rayzor, 106 Tex. 544, 172 S. W. 1103. The petition shows the issuance of a fire insurance policy upon personal property for the sum of $1,000; that the property was totally destroyed, giving the date of the fire, and also that notice and proof of loss were made and demand of payment and the refusal thereof. The prayer is for judgment for the sum of $1,000, all costs, and such other and further general and special relief, in law and in equity to which the plaintiff was justly entitled. The petition only asks for the recovery of the amount stated in the policy. It might have been construed as authorizing the recovery of interest if the court had jurisdiction; yet it is doubtful whether the other and further relief in law and equity asked for was intended to secure a recovery for any other sum than that stated in the petition. Law and equity could have afforded relief in other ways than by increasing the amount stated for which recovery was sought. Where a party has selected the forum to hear and determine his rights, the allegations of his petition relied upon for the purposes of defeating the jurisdiction which he had invoked should show plainly that the jurisdiction of the court is negatived by the petition. Under the Rayzor Case we overrule appellant's motion to reverse and dismiss the case upon the stated ground therein that the court had no jurisdiction.

[3] It is also urged by the appellees, in a motion to strike out the assignments of error, that the assignments presenting error were the grounds presented in the motion for new trial, and that this motion and the grounds set up therein presented no reversible error, for the reason that the motion and the proof thereunder did not show the defense of the appellant to the cause of action declared upon, or that it had a meritorious defense. It does not occur to us that, where the question presented is to the action of the court in overruling the plea of privilege, it will be necessary to set out that the defendant had a good defense to the cause of action. The question presented by the plea is whether the court, over the objection of the defendant, had jurisdiction over its person. If it is ascertained that the court did not have jurisdiction, and yet after such fact is ascertained the cause is prosecuted to judgment, over the objection of the defendant, the judgment would be illegal, and should be set aside, and the cause transferred to the court having jurisdiction over the person. It has been stated by the Supreme Court substantially that, where the

record shows the court did not have jurisdiction over the person the judgment would be void, and it would not be necessary to allege a meritorious defense in order to set it aside. August Kern v. Freeze, 96 Tex. 513, 74 S. W. 303. So it would seem that, where a defendant by his plea objects to the court exercising jurisdiction over his person for the purpose of judgment, this is the only issue, and this question must first be determined before a hearing upon the merits. We do not think the defendant is required to submit his defense to a court which has no jurisdiction over him. When the facts are established which show that he should be sued elsewhere, he may rest on that fact and have that determined, and when that fact is established the judgment, whether rendered by default or upon the merits, is without authority of law and without jurisdiction over the person of the defendant, and is somewhat analogous to a judgment without service shown by the record. The motion of appellee to strike out the assignments will be overruled.

[4] The first assignment is to the effect that the court erred in overruling and in not sustaining appellant's plea of privilege. This assignment is followed by several propositions. The appellee, in answer to these assignments, insists that the action of the court was proper, because the evidence fails to show that appellant was authorized or had a permit from the commissioner of insurance and banking, as required by law, and for that reason defendant had no legal domicile in Dallas county or any other county in the state, and therefore suit was maintainable in the county of the plaintiff's residence. As will be noted by the pleadings, the suit was instituted against appellant by name, alleging that it was doing an insurance business in the state of Texas, and with an office and place of business in Dallas county, Tex., in the city of Dallas, with Edward T. Harrison as manager and attorney, upon whom service could be had. This, it would seem, was sufficient to show a legal liability by a legally existing association and is an answer to appellees' contention, especially when the plea of privilege practically admits such legal entity. Unless the Merchants' Reciprocal Underwriters of Dallas is the organization with whom Gerlach Mercantile Company contracted for insurance appellee has no cause of action. If the contention of appellee should prevail, it then states its case out of court.

[5] If appellant issued the policy when the law did not authorize it to do business in Texas, those acting in its name might be personally liable and should be sued individually, and not as an organization, setting up the illegal acts which would render the individuals liable. The agreement or power of attorney introduced in evidence on the plea shows on its face that it was an agreement

between individuals whereby, as subscribers, they could obtain reciprocal or interinsurance against loss by fire, and to be effected through a common agent, giving the rights and liabilities of each member. If this was not an organization under the act of 1913, suit should have been brought against the joint obligors. It is the rule in this state that a partnership cannot sue or be sued as such, but it is only the members who can sue or be sued. These parties should be sued at their place of residence. This right is a valuable one which the courts will respect when properly invoked or insisted upon. Where parties enter into a written contract to perform an obligation in a particular county, suit may be brought therein, and such an agreement is valid and enforceable. Texas Moline Plow Co. v. Biggerstaff, 185 S. W. 341; State v. Superior Court, 61 Wash. 681, 112 Pac. 927, Ann. Cas. 1912C, 814.

[6, 7] We are unable to perceive any reason for declaring a provision of a contract entered into by a number of individuals to indemnify each other from loss by fire void because it requires suits to be brought to enforce the obligation in the county, and not elsewhere, in which the parties select to establish and maintain their office for the transaction of the business of the concern. They thereby mutually agree to waive the right of suing or to be sued in any other county. Having entered into such a contract, a suit instituted at a place not agreed upon and in violation of the agreement will not defeat the policy or be a defense in bar of the recovery thereon, but if the mutual agreement is invoked, we can see no reason why the court may not enforce it by changing the venue according to the agreement. Under the pleadings and the proof on the plea of privilege in this case, we think when the allegation of the appellant that its domicile was in Dallas was so proven or admitted, it then devolved upon the appellees to show that the underwriters were not such an organization as could then do business at that place or any other under the laws of the state. Hilliard v. Wilson, 76 Tex. 180, 13 S. W. 25; Holmes v. Coalson, 178 S. W. 628; Cloyd v. Sacra, 175 S. W. 456. It is our view that the agreement shown in this case is sufficient to establish that appellant was doing business in Texas under the act of 1913. A comparison of the terms of the agreement and the provisions of that law convince us that the organization was acting under the above act. We shall not take the time nor space to give the comparison. Its place of domicile is alleged by both parties, and is an uncontroverted fact as being in the city of Dallas, Dallas county. The policy and the power of attorney executed by the Gerlach Mercantile Company show the organization was not acting under the general insurance laws of this state, or under chapter 10, tit. 71, Revised Civil Statutes, as to mutual fire insurance companies. That act requires the title of the company organized thereunder to contain the word "mutual," and which must appear upon the first page of every policy. There is no such provision in the act of 1913, and the name of appellant or the policy in this case do not anywhere use the term "mutual." The first section of the act of 1913 provides:

"The making of contracts between individuals, firms or corporations, providing indemnity among each other, from casualty or other contingency or from fire loss or other damage to their own property, shall not be subject to the laws of this state, relating to insurance." Vernon's Sayles' Civil Statutes, art. 4972a et seq.

The laws of this state relating to insurance, in our judgment do not control an organization such as this. Subdivision 29 of article 1830, Revised Civil Statutes:

"Suits against fire, marine or inland insurance companies may also be commenced in any county in which any part of the insured property was situated."

This provision has been the law since 1874, and relates to insurance. It would therefore appear under the first section of the act of 1913 that organizations such as appellant are not subject to that provision, and the agreement to sue in Dallas county, and not elsewhere, would not be in violation of the above provision. If, however, it can be said that appellant was subject to the venue therein provided, yet this is a suit upon a policy issued by virtue of an agreement to indemnify the parties thereto from loss by fire to their own property. The provision that suits should be maintained in the county where the office and business of this mutual enterprise was located and carried on, and not elsewhere, would appear to be a reasonable stipulation. This organization is not a public service corporation, and the same rules of strictness relating to contracts by public service corporations doubtless will not apply to organizations of this kind, if indeed there is any restriction as to such on the ground of public policy, as urged by appellee. In the case of Nute v. Hamilton Mutual Insurance Company, 6 Gray (Mass.) 174, there was a provision that the assured may within four months, and not afterwards, bring an action against the company, which action should be brought at a proper court in the county of Essex. This clause in that case appears to have been pleaded as a defense in bar of the action brought on the policy in a different county, thereby seeking to defeat the action. It was there held a noncompliance with the stipulation was not a defense to the action, and "would not be conditions annexed to the contract to defeat it if not complied with, and so to be used by way of defense to an action upon it." The case of Greve v. Ætna, etc., Ins. Co., 81 Hun, 28, 30 N. Y. Supp. 668, appears to have reached a different conclusion and to have declared the stipulation valid, requiring its en-

forcement. In Daley v. People's Building, etc., 178 Mass. 13, 59 N. E. 452, the Supreme Court of Massachusetts again passing on a contract with a similar provision to be performed in New York, followed the Greve Case, above cited, and refers to the Nute Case as a "somewhat halting decision." In Benson v. Eastern Building, etc., 174 N. Y. 83, 66 N. E. 629, the Court of Appeals of New York in effect, we think, overruled the Greve Case, and also criticized the Daley Case. It is said by the New York court in the latter case that the Nute Case was not overruled in the Daley Case, but distinguished in the fact that the stipulations in the earlier case prescribed in what county the action should be brought, while in the latter case it required the action to be brought in another state—New York.

"We do not see that the difference in circumstances justified any distinction in principle. In the latter case the learned court said, referring to such a condition in the agreement: 'It plainly purports to attach a condition to the contract, and we are of opinion that it does so effectually.' We assume that this is to say that the parties have agreed that the shareholder should have no cause of action against the defendant unless his action was brought in the specified county in the state of New York, and that therefore, when he brings a suit elsewhere, his cause of action is not established. We think this argument proves too much."

It is further said therein:

"Therefore the condition in the contracts, if valid (and it may be so in this case, since, the principal office of the defendant being in the county of Onondaga, that was a county in which the Code authorized the action to be brought), affected only the venue of the action. If, in violation of the stipulation, the plaintiff brought his action in another county the defendant's remedy was to move to have the place of trial changed to that in which the plaintiff had agreed it should be brought. The Code provides in what counties the venue of an action may be laid; but if in contravention of those provisions, the venue is laid in another county than that prescribed, the remedy given is a motion to change the place of trial. The erroneous practice neither affects the jurisdiction of the court nor defeats the cause of action."

It is the rule in most jurisdictions that the parties to an action may make a valid and binding agreement to fix the venue of an action in a particular county. We have a statute which authorizes a change of venue upon agreement by the parties. Article 1911, Revised Civil Statutes. This right was recognized before the statute. Burnley v. Cook, 13 Tex. 586, 65 Am. Dec. 79. This principle above stated is recognized by many decisions in this state. While parties cannot by agreement or waiver confer jurisdiction on courts as to the subject-matter, it is generally recognized that a defendant may waive his privilege to be sued in a particular county. It seems to us, where the venue stated gives to plaintiff the right to bring his suit in two or more places, he has the right of election as to which place he will institute the proceedings, and that, having the right of election, if he should enter into an agreement that he will bring the suit in one of the particular places permitted by the statute, and not elsewhere, such a contract should be held to be legal, and that courts should enforce such a contract in so far as to compel plaintiff to litigate his right in the county he agreed it should be. The agreement in this case confines the venue to the county of the appellant's domicile, the place where the statute requires the suit to be prosecuted, if it did not fall under an exception which permitted it to be filed elsewhere.

[8] The appellee bank, as assignee, brought this suit against the appellant and the Gerlach Mercantile Company, whose residence is inferentially alleged to be in Hemphill county. This will not confer jurisdiction over the appellant under the fourth subdivision of article 1830, Revised Civil Statutes. The proviso in the subdivision in effect states that an assignment of a note or chose of action will not give the subsequent holder the right to institute suit thereon in any other county than the county in which the suit could have been prosecuted if no assignment had been made. Roaring Springs, etc., v. McAbee, 187 S. W. 431.

We believe the judgment of the trial court should be reversed, and that the plea of privilege be sustained. This court will reverse and sustain the plea and remand the case, with instructions to the trial court that he enter an order transferring the cause as prayed for, and, under article 1832, Revised Statutes, reversed and remanded.