tion of the accused on trial. See Tally v. State, 48 Tex. Cr. 474, 88 S. W. 339; Askew v. State, 54 Tex. Cr. R. 414, 113 S. W. 287; Johnson v. State, 63 Tex. Cr. R. 50, 138 S. W. 1021; Harris v. State, 72 Tex. Cr. R. 117, 161 S. W. 127; Bradley v. State, 72 Tex. Cr. R. 287, 162 S. W. 515; Branch's Ann. Tex. P. C. § 364; also Scitern v. State, 87 Tex. Cr. R. 112, 219 S. W. 833; Harris v. State, 72 Tex. Cr. R. 117, 161 S. W. 125.

For the reason stated, the appellant's motion for rehearing is granted, the affirmance is set aside, the judgment of the trial court is reversed, and the cause remanded.

= = =

ROWLEY et al. v. BRALY et al.   (No. 2686.)*

(Court of Civil Appeals of Texas. Amarillo. May 26, 1926. Rehearing Denied June 30, 1926.)

1. Evidence ⬉260.

Evidence *held* to make prima facie case of conspiracy between bank and individual in procuring, deed to land sufficient to justify admission of confessions of alleged coconspirator.

2. Trial ⬉139(1), 140(1).

Jury are exclusive judges of weight to be given testimony and to credibility of witnesses.

3. Trial ⬉208.

Instruction to jury not to consider statements and declarations admitted in evidence *held* tantamount to excluding such evidence when offered.

4. Conspiracy ⬉19.

Circumstantial evidence is admissible to prove conspiracy.

5. Conspiracy ⬉19.

Evidence in civil suit for damages as to conspiracy need only be full, clear, and satisfactory; doctrine of reasonable doubt having no application.

6. Evidence ⬉253(1).

When, in civil suit for damages, evidence shows prima facie case of conspiracy, evidence of statements and declarations of coconspirator become admissible in support of such prima facie case.

7. Appeal and error ⬉1068(1).

Finding that there was no conspiracy *held* not conclusive as to admissibility of declarations of coconspirator, where court erroneously instructed jury not to consider such declarations, as jury did not have all the evidence before it.

8. Deeds ⬉17(1).

Deed of interest in property by mother who understood that consideration was to be paid to her son *held* based on sufficient consideration.

9. Deeds ⬉70(1).

Deed by mother, conveying interest in property which she understood belonged to her son,

given for purpose of clearing title, *held* not secured by fraud and to effectively convey interest described therein.

**10. Vendor and purchaser ☞226(1).**

Attorney acting for bank in transactions whereby deed to homestead was given to third party and from him to bank, which sold the land to the attorney, *held* charged with notice of any defect in acknowledgment.

**11. Vendor and purchaser ☞227—Notary who took acknowledgment to homestead deed is charged with notice of any defect therein on becoming subsequent purchaser.**

Where notary, who took acknowledgment of deed conveying homestead, subsequently secured title to property, he was charged with knowledge of failure, if any, of requirement that wife of grantor be examined separately and apart from husband, and, in absence of intervening purchaser in good faith, could not claim as innocent purchaser.

**12. Vendor and purchaser ☞73, 277—Nonresident landowner could contract with nonresident purchaser for payment outside of county where land was situated and vendor's lien could be foreclosed where notes were payable (Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subds. 3, 5, 12).**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subds. 3, 5, 12, nonresident owner of land on sale to nonresident purchaser could contract for payment of purchase-money notes in county other than that in which land was situated, and vendor's lien could be foreclosed in county where notes were payable.

**13. Contracts ☞127(4).**

Venue can be fixed by contract.

**14. Appeal and error ☞1060(1)—Trial ☞115(2).**

Remarks of counsel in addressing jury that, if they wanted to find for plaintiff, they should answer certain questions, "No," *held* improper and ordinarily reversible error.

Appeal from District Court, Dallam County; B. N. Richards, Special Judge.

Suit by Clifford Braly against Elizabeth Rowley and others, wherein certain defendants filed a cross-action and impleaded Roy Rowe and another. From the judgment, defendant named and others appeal. Reversed and remanded.

R. E. Stalcup and Art Schlofman, both of Dalhart, for appellants.

Tatum & Strong and Clifford Braley, all of Dalhart, and W. I. Gamewell, of Dallas, for appellees.

RANDOLPH, J. Clifford Braly, as plaintiff, filed this suit in the district court of Hartley county, Tex., being an action of trespass to try title, for damages and for partition of real estate, against Elizabeth Rowley, a widow, also known as Mrs. A. J. Rowley, and Guy Rowley and his wife, Mary Rowley, as defendants, to recover an undivided one-half interest in certain real estate, and for partition of such half interest. By agreement, the case was transferred to Dallam county and there tried.

Defendants Guy Rowley and wife filed their third amended original answer and cross-action containing, first, general demurrer; second, general denial; and third, special answers setting up in part, the following defenses and matters of cross-action: That the interest in the realty which the plaintiff is seeking to recover is the homestead of himself and wife. That there existed a conspiracy between one Roy Rowe and the First National Bank of Dalhart, Tex. (who were impleaded by said answer) as follows: Alleging an indebtedness on the part of defendant Guy Rowley to said bank in the sum of $4,345, which was secured by chattel mortgage upon certain personal property, and by a crop mortgage. That the circumstances under which he became indebted to said bank are as follows:

That one J. P. Martin was the owner of the above-mentioned personal property, and was indebted to the said bank to that amount, and was unable to pay same. That the said bank desired that said Guy Rowley take over said personal property and assume such indebtedness, and that said bank agreed with said defendant, and promised him that, if he would buy said personal property from Martin and would assume the indebtedness owing by said Martin, the bank would extend the indebtedness from time to time and give the said defendant ample time and opportunity in which to meet said obligation. That, in consideration of said promise of said bank, the said defendant purchased said personal property from Martin in consideration of the defendant assuming the indebtedness of said Martin to the bank. That, in taking over the personal property and in assuming the indebtedness owing to the bank by said Martin, defendant believed the said statement of the bank that it would continue the indebtedness from time to time and give him ample time to pay same, and, but for the fact that he relied on such statement, he would not have taken over said personal property and assumed said indebtedness. That during the year 1918 W. N. Stone was the president of said bank and was the main and active official for said bank in all matters and things herein complained of, was acting for said bank as said official, and in all things so done by him was acting within the scope of his authority as such president. That, notwithstanding such statements and representations of said bank aforesaid, and notwithstanding it stated to this defendant, when he purchased the property from Martin, that same was sufficient security for such indebtedness, on or about March 29, 1918, the said Stone, acting for said bank, came to him and demanded other and additional security for

such indebtedness, and required of him a deed of trust on the real estate owned by him and described in plaintiff's petition, which property at said time was his homestead. That said Stone stated to him (defendant) that, if he would execute this deed of trust, the bank would carry this indebtedness for a long time and would fully protect him in the matter, but, if he would not give such deed of trust, the bank would immediately foreclose its mortgage on the defendant's personal property. That at said time defendant's personal property covered by said mortgage was worth an amount in excess of his debt to the bank.

That the defendant was ignorant of the fact that the bank could not foreclose its mortgage lien until it came due, but relied on the statements of Stone that it could be done, and, being financially unable to pay said indebtedness at the time, and believing if the bank foreclosed he would lose his equity in said property, and believing the representations, and relying on same, that the bank would fully protect him in the matter of his indebtedness and give him ample time to pay same, the defendant and his wife executed a deed of trust on his undivided half interest in the land in controversy. That on May 1, 1918, he sold, with the consent of the bank, certain portions of said personal property for the sum of $900, which sum was paid to the bank, thereby reducing his debt to it to the sum of $3,650, and leaving such balance amply secured by the residue of such personal property, which was of the value of $4,200. That about June 1, 1918, Roy Rowe was largely indebted to the bank, the amount of which defendant is unable to state. That said indebtedness was then due and payable, and the bank was threatening to foreclose its security held for said indebtedness unless said Rowe would immediately pay same. That on or about June 1, 1918, the bank conceived an unlawful and fraudulent purpose and design of taking from this defendant his said personal property, of the reasonable value of $4,200, and of taking from him and his wife their homestead, of the reasonable value of $7,000, and at a vastly reduced valuation under unconscionable conditions and at an unconscionable bargain. That, with this end in view, the said Stone, acting for the bank, went to the said Rowe and stated that, if he (Rowe) would aid the bank in such unlawful enterprise, the bank would extend for a long time the indebtedness owing by him to the bank, and, in consideration of such promise of extension, Rowe agreed to give his aid and services to the bank in its efforts to carry out such unlawful enterprise. That it was then and there agreed between Rowe and Stone that, if said undertaking could be consummated, for the time being the title to said land should be taken in the name of the said Rowe to be held by him for some time and later to be conveyed to the bank for its use and benefit. That, also in furtherance of such unlawful enterprise, it was then and there agreed between Rowe and Stone that Stone should use certain pressure or coercion on this defendant in order to force him into the sale of such property, notwithstanding said debt was not due and notwithstanding the bank's promise to carry said indebtedness from time to time until defendant could meet the obligation; said bank well knowing that said deed of trust so given was unenforceable because of the land being a homestead. That it was agreed between Rowe and Stone, both of whom well knew that defendant had great confidence in the judgment and friendship of the said Rowe, that the said Rowe should tell defendant that said bank could and would foreclose its mortgage lien on defendant's personal property and the deed of trust on the land. That, in pursuance of such agreement, the bank wrote a letter stating that such debt was then due and had to be immediately paid, although said bank knew the indebtedness was not due. That, also in furtherance of such fraudulent scheme and design, and waiting for such length of time to elapse as he thought that the pressure and coercion, which the bank had agreed to bear on this defendant, would have a proper depressing effect on the mind of this defendant, and after defendant had received such letter from the bank, and while under great mental distress on account of the bank's threat to foreclose its lien and to foreclose its deed of trust on defendant's home, the said Rowe came to the defendant and stated to him that he (Rowe) knew that the bank had a right to immediately foreclose its mortgage lien and deed of trust, and advised him to sell his personal property and land to pay the bank's debt. That defendant was an uneducated man and wholly unfamiliar with the laws of Texas and of his legal rights in the premises, and that he was wholly without means to pay said debt, and had no friends or relatives to look to for support, and was wholly at the mercy of the bank. That, had he not been misled and deceived by the false representations and statements of the bank, contained in the letter, and had be been fully advised as to his legal rights, that said deed of trust was unenforceable against his homestead and that the bank could not enforce the mortgage until the maturity of the debt, he would not have made the deed, nevertheless defendant, on account of his financial condition and lack of funds and lack of friends to aid him, was not able to and could not have prevented by injunction, or other legal remedy, the illegal sale of such personal property or of his home, stead. That, while the statements contained in the letter as to an immediate right of foreclosure were untrue and the bank knew the same to be untrue, the bank nevertheless made same as a statement of an existing fact, and intended that same should be believed, and this defendant did believe same, and was thereby deceived to his great injury, and this

same allegation is repeated as to Rowe. Defendant further alleges that Rowe, in furtherance of such scheme, offered to buy said personal property, then valued at $4,200 and his home, then valued at $7,000, and offered to give defendant the sum of $1,100 in cash and agreed to assume, or to have canceled, the indebtedness due by defendant to the bank, and advised him to sell said property on such terms, and that, if he did not, he (defendant) would never get anything out of his property.

Fully relying on all of said statements of the bank and Rowe, defendant on the 18th of June, 1918, made a transfer of his personal property to Rowe or the bank and on said date, joined by his wife, also executed a deed to their homestead to Rowe; also alleging that the cancellation of the debt, which was $3,650, and the $1,100 cash paid was vastly less than the value of the property. That on the 18th of May, 1920, Rowe conveyed the land to the bank, for which it is alleged there was no consideration or substantial consideration. The further allegation is made that the plaintiff was at all times the attorney for and a stockholder in said bank, and a part of said time was an officer of said bank, and as such attorney he represented the bank in the execution of the deed from defendant to Rowe and that he had full knowledge of such transaction, or, if he did not have actual knowledge of same, then defendant charges that, because of his relations with the bank, he was chargeable in law with full knowledge of all the facts and transactions. Further defendant alleges that the deed executed by him and his wife to Rowe on the 18th of June, 1918, conveying the land in controversy, did not convey any title to Rowe, for the reason that the acknowledgment of the defendant's wife was not taken by the notary public, who was the plaintiff, Clifford Braly, in the manner provided by statute for the acknowledgments of married women, in that the acknowledgment of the wife was not taken separate and apart from her husband, and that she was not asked if she wished to retract it.

Defendants pray for cancellation of said deed and for recovery of the land, costs, and with prayer for general relief, and, in the alternative, that the court declare a trust on the lands, etc.

We have given this much of defendant's (Guy Rowley's) pleadings that the idea of the conspiracy charged by defendants to have existed between Rowe and the bank might be fully understood. The pleadings are so voluminous that it is impossible to do more in the short compass of an opinion.

Elizabeth Rowley files answer and cross-action, claiming two-thirds of the whole of the tract in controversy; that is, a one-sixth interest in addition to an undivided one-half interest which she owned as a member of the community of A. J. Rowley and herself at the time of A. J. Rowley's death.

Plaintiff's first supplemental petition contains a general exception and twenty-four special exceptions and then special answers to defendant's pleadings, which will not be set out here.

The cause was submitted to a jury on special issues, and, on their answers to the issues, both parties filed motions for judgment, and the court sustained appellees' motion and rendered judgment for the plaintiff for an undivided half interest in the land and appropriate judgment as to the other parties, from which appeal has been taken by the Rowleys.

Appellants' first proposition alleges error as follows:

"In the trial of a case, on an issue of conspiracy, where sufficient evidence is offered on the issue to require the court to submit it to the jury, then, in addition thereto the confession of one of the conspirators is given in evidence, it is error for the court to charge the jury that it cannot consider such confession for any purpose in connection with the issue of conspiracy."

Appellees reply to this by counter propositions that the evidence in the case at bar did not establish a conspiracy between the bank and Rowe, the alleged coconspirators, and does not establish with any degree of certainty the date of said alleged conspiracy, and the acts and declarations of the said Roy Rowe were not admissible as evidence against his alleged coconspirator, the bank. Further, where a conspiracy is alleged, the fact of such conspiracy, as alleged, must be proved by the party alleging it, by evidence outside of the admissions of a coconspirator, and such conspiracy must first be established by such evidence before the acts and declarations of one of the alleged conspirators are admissible as evidence against his coconspirator, and the evidence in the case at bar did not establish the alleged conspiracy; that the evidence consisted of disconnected circumstances, any one of which, or all of which, were just as consistent with a lawful purpose as with an unlawful undertaking, and such evidence, failing to meet the burden of proof placed upon appellants in establishing such conspiracy, was not admissible.

[1] The appellants cite the following evidence as circumstantially establishing the conspiracy: That the bank induced Rowley to take over the personal property held by Martin and mortgaged to the bank, and pay Martin the difference between its value and the debt to the bank, and to assume the debt to the bank; that the bank agreed with Rowley if he would do so it would make extension of the time of the payment so that he could work out the amount; that, when the debt came due, the bank refused an extension unless Rowley would give a deed of trust on the land in controversy, as additional security; that, before the debt came due, the bank wrote Rowley a letter demanding payment and threatening foreclosure of the chat-

tel lien and of the deed of trust; that immediately thereafter Rowe showed up on the scene and told Rowley that the bank had the right to foreclose, even though the debt was not due; that the bank wrote a second threatening letter, and that Rowe made a second visit to defendant following the second letter; that Rowe advised Rowley to sell, and whatever he obtained would be that much saved, as he would lose all of it if he did not sell; the offer of Rowe to buy the property and to pay the bank debt and about $1,000 in cash, which was less than one-half the value of the property; the fact that the deal was closed in the bank, in the presence of its officials and its then attorney and stockholder and present officer, plaintiff Braly; that no money passed from Rowe to Rowley, but the bank itself gave Rowley a credit of $1,152 at the time and told him that he could not check out over $100 per month, although he owed the bank nothing at the time; that, in closing the deal, the bank had Rowe to execute to Rowley vendor's lien notes against the land in an amount equal to what Rowley had owed the bank, and at the very time had a transfer made of these notes to the bank; that the bank's attorney, Braly, was present at all times and directed the transaction in behalf of the bank; that Rowe took possession of the land and deeded it to the bank without one dollar consideration, except the cancellation of the notes given to Rowley, which were substituted for the Rowley debt to the bank; the fact that, from the time of sale to Rowley, the bank exercised ownership of the personal property and made sale of it to various parties; the fact that, soon after the sale by Rowley, Mat Fuson went to Rowe and offered to buy some of the mules, and Rowe told him to go to the bank as they owned the property; that Fuson went to the bank and they sold him the mules and as consideration took his notes and mortgage payable to the bank; that the bank offered no explanation of why it assumed to sell the mules to Fuson and the cattle to Joe Smith and Spencer and no evidence was offered by the bank to show that it had bought the personal property from Rowe, or that Rowe had authorized it to sell personal property for him; the promise of the bank to pay Rowe "something" for a deed to the land, but paying nothing after 8 years.

Upon this testimony the defendants then offered the "confessions" of Rowe, and, after hearing all of the evidence, the court instructed the jury that they could not consider such statements for any purpose.

[2, 3] As to the truth or falsity of the testimony, we have no duty to perform, as such inquiry lies wholly within the province of the jury. They are the exclusive judges of the weight to be given to the testimony and of the credibility of the witnesses. The court submitted to them the question as to whether or not there was a conspiracy between Rowe and the bank, or between Rowe and Stone, president of the bank, as charged in Rowley's cross-action, to which the jury answered, "No;" the court having admitted in evidence the declarations of Rowe, who is charged as one of the conspirators, and then charged the jury not to consider such statements and declarations for any purpose. This was tantamount to excluding such evidence when offered. Was this error?

[4] Circumstantial evidence is admissible to prove conspiracy. 12 C. J. p. 633. In the case of Brown v. Chenoworth, 51 Tex. 469, there was testimony tending to prove a conspiracy between the defendants, in that case to coerce a compromise. Plaintiff then offered to and was permitted to prove, over objection made, that John Chenoworth, when none of the defendants were present, threatened to whip his wife unless she signed the compromise, and, in approving the bill of exceptions, the trial judge added: "The evidence showed to my mind a conspiracy to secure the release and that the act of one is the act of all." The Supreme Court, in passing upon the admissibility of the evidence, said:

"If in the opinion of the judge presiding, as recited in the bill of exceptions, the evidence showed to his satisfaction the alleged conspiracy, then there was no error in admitting the * * * testimony."

We do not think that the holding in the case of Hughes v. Waples-Platter Grocery Co., 25 Tex. Civ. App. 212, 60 S. W. 981, is in point or is decisive of the question here, for the reason given by the Supreme Court that the only objection to the admissibilty of the statements and declarations was that they were hearsay, and that court assumed that the evidence sufficiently established the alleged conspiracy between the parties charged, and that such declarations were made in pursuance and furtherance of the conspiracy, and therefore decided the question upon that assumption.

Chief Justice Fly, in the case of San Antonio Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289, writ denied, lays down the rule that:

"It is a well-settled rule of evidence that, when the testimony establishes a conspiracy, the acts and declarations of a coconspirator, made in furtherance of the common design, are admissible against all of the conspirators."

[5] We cannot apply this rule with a full understanding of the reason for it. If the conspiracy is established, then what purpose can the declarations and statements introduced in evidence serve? And have such declarations any office to serve in proving the conspiracy? Mr. Webster defines "established" to mean, "Make steadfast, firm, or stable, to settle on a firm or permanent basis." If this is the condition of the proof before the trial court, and the conspiracy has been established, the refusal of said court to permit the jury to

consider the statements, declarations, or confessions of Rowe would become immaterial.

"In order to establish a conspiracy, evidence must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Disconnected circumstances, any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. However, the doctrine of reasonable doubt has no place in a civil suit for damages where it is sufficient if the evidence is full, clear and satisfactory, and a conspiracy established by a preponderance of the evidence. This degree of proof, however, is necessary. The evidence must do more than raise a suspicion. It must lead to belief." 12 C. J. pp. 639, 640.

[6] The most satisfactory disposition of the question, but not entirely so, to our minds, has been made in the holding of Chief Justice James of the San Antonio Court, in the case of Sullivan v. Fant, 51 Tex. Civ. App. 6, 38, 110 S. W. 507, 522, writ denied, in which he lays down this rule:

"When evidence was developed that was sufficient to show prima facie a conspiracy, a condition of evidence arose which, as a rule of evidence, made the acts and statements of one the acts and statements of the other, provided the jury believed there existed a conspiracy."

This ruling, however, does not meet all the objections which our point of view gives rise to. It is not submitted to the jury to determine whether or not a conspiracy exists before being entitled to hear the declarations. We think the proper rule is laid down by Judge James in the last above case, if his proviso is left off his statement of the rule. When such a prima facie case is developed, the evidence of the statements and declarations become admissible to aid the jury in determining their answer to the issues. If this is not correct, of what avail would the proof of such declarations be to the party offering them. This view of the question and its answer is supported by Taylor Bros. Jewelry Co. v. Kelley (Tex. Civ. App.) 189 S. W. 340, 341; Longworth v. Stevens (Tex. Civ. App.) 145 S. W. 257, 260; Wells v. Scales (Tex. Civ. App.) 222 S. W. 303, 304; Mason v. Gantz (Tex. Civ. App.) 226 S. W. 435, 437; Ward v. Scarborough (Tex. Com. App.) 236 S. W. 433, 440.

We therefore hold, without a further discussion of the facts, that the evidence introduced by the defendant Guy Rowley, from his viewpoint, presented a prima facie case, and, without considering the evidence of the plaintiff, that the alleged declarations and statements of Rowe were admissible in evidence in support of such prima facie case.

[7] We are confronted with the proposition by appellees in the consideration of the question just discussed, that, the jury having found there was no conspiracy, this settles the question adversely to the appellants. We do not concede this to be correct. If the defendant Rowley made a prima facie case and was then refused the right to aid such case by the introduction of such declarations, the jury did not have the whole of the evidence before them in order for them to determine whether or not a conspiracy had been established, and hence it was error for the trial court to instruct them not to consider the declarations for any purpose. Especially was the action of the court harmful in permitting the introduction of the evidence and then emphasizing his ruling by withdrawing it from their consideration.

[8] Defendant Elizabeth Rowley's plea of want of consideration for the deed to Rowe coming to her, cannot be sustained. She testifies that she read the deed, knew that it recited that the consideration was to be paid to her son, Guy Rowley; hence it had a sufficient consideration. It is not necessary that the consideration should have been paid to her; if it was paid to her son with her knowledge and consent, it was sufficient. 18 C. J. pp. 163, 164. But it is insisted that, being in ignorance of her legal rights, that is, that being ignorant of the amount of land she owned, her deed was ineffective in conveying the one-sixth interest she received by the deed from one of her children.

[9] In the matter and manner of securing this deed from her by plaintiff Braly, as the attorney for Rowe, or for Guy Rowley, there is no act of fraud or misrepresentations charged or proved. Braly was examining the title for Rowe at the time of his purchase. He found this outstanding one-sixth interest in Mrs. Elizabeth Rowley, and raised that objection to Guy Rowley's title to an undivided one-half interest. Guy told him that it belonged to him, and, in order to straighten the title of record, Braly included Mrs. Rowley in the deed, and, at Guy's request, sent it for her signature. The deed was presented to her twice. She returned it or had it returned the first time and wrote Braly that she did not see that it was necessary for her to sign Guy's deed, but that she would go and see her lawyer, and, if it was necessary, she would sign it; that the half interest was Guy's and not hers. The plaintiff sent the deed to a bank in Virginia, accompanied by a letter fully setting out her interest in the land. It is true that Mrs. Rowley denies ever having seen the letter, but it discloses clearly Braly's reason for requiring it, the extent of the interest vested in Mrs. Rowley, and that he was concealing nothing and making no representations that were not true, to get her to sign it. She testified that at the time she signed the deed she "did not know how much land I owned there, and the first time that I learned how much interest I had down here was about a year ago, or a year and a half ago, when my attorney, Art Schlof-

(286 S.W.)

man, told me." She also says that she took the deed to her attorney in Virginia and he advised her to sign it.

Our ruling here also applies to the fourth assignment and proposition germane to it.

The evidence complained of in the fifth assignment and the trial court's admission of same, was not subject to the objection made. The evidence did not show an effort to compromise, but was a distinct assertion of her right to an undivided half interest in the land, and her desire to secure a partition of such interest.

The appellants Guy Rowley and wife had pleaded that the land in controversy was their homestead, and make the contention that, being such homestead, the acknowledgment of Mary Rowley to it was not taken in the manner required by law so as to make it a conveyance of the homestead, that Rowe, the bank, and the plaintiff had knowledge of the vice in the acknowledgment, and were charged with knowledge thereof, because the plaintiff Braly participated in all the transactions as attorney for the parties.

[10] If the jury should find that there was a conspiracy between Rowe and the bank, the plaintiff, who had taken her acknowledgment to the deed, knowing the vice in the acknowledgment, if there was any such vice, and acting as attorney for the bank in the transaction, would naturally be charged with notice. It will be understood that, at the time Rowe deeded the land to the bank, Guy Rowley and his wife were not living on the land, neither were they living on it at the time the plaintiff bought it from the bank, but at the time the deed to Rowe was executed they were living on it. Braly represented Rowe in the examination of the title to the land at the time he purchased it from the Rowleys, and at that time he discovered the defect in the title making it necessary for the deed to include Mrs. Rowley, Sr. This seems to have terminated his employment by Rowe. At Guy Rowley's request he prepared the deed to Rowe, a joint deed from Guy Rowley and wife and Mrs. Elizabeth Rowley to Rowe. It seems also that he represented the Rowleys in some other isolated transactions. The deed from the Rowleys to Rowe was executed, or dated, June 18, 1918, and the plaintiff did not form his connection with the bank until May, 1920, nearly two years after that date, and there is not a particle of evidence to show that the plaintiff had notice, by reason of his being attorney for and a stockholder in the bank, of the alleged conspiracy between the bank and Rowe. Plaintiff pleads that Guy Rowley and wife made and executed the deed to Rowe conveying the property in controversy, and that he became the owner of said land by deed from the bank to whom Rowe had conveyed it, for a valuable consideration paid, and that, by said deed from Guy Rowley and wife, said Rowley was estopped to recover any part of said land, and that the plaintiff relied upon said deed, and, but for same, would not have paid the consideration he did pay. Further, plaintiff pleads that he is an innocent purchaser in good faith, for a valuable consideration, and without notice. The jury found that the plaintiff, on the date the deed of the First National Bank was delivered to Braly, did not know of the claims of the said Guy Rowley and his wife to the land, and that he paid a valuable consideration for same.

[11] Does the rule that, where a married woman, who has with her husband signed a deed conveying her separate property (or homestead), appears before an officer authorized by law for the purpose of acknowledging the conveyance, and the officer fails to do his duty in taking such acknowledgment, but makes a false certificate which shows a full compliance with the law, such certificate is conclusive upon the married woman in favor of an innocent vendee, who paid value for it, without notice that the officer failed to perform his duty as required by law (Wheelock v. Cavitt, 91 Tex. 682, 45 S. W. 797, 66 Am. St. Rep. 920), apply in this case? We think not. In the case at bar the notary who took the acknowledgment is the present holder of the title which was passed by the deed to Rowe. If he did not comply with the requirement of the statute that he examine the wife of Rowley separate and apart from her husband, and otherwise failed to comply with such statute, he certainly knew it. There could be no question of notice not being brought to him, and, unless there was an intervening purchaser in good faith, for a valuable consideration and without notice, in this case, the bank, he would not be in a position to deny knowledge and to claim for himself that he was an innocent purchaser. In the event the jury should find that there was no conspiracy as charged by the Rowleys, then the bank would stand in that relation, but, should the jury find that the charge of conspiracy was sustained, and that the bank and Rowe were conspiring as charged, then Braly, having full knowledge of the vice in the deed, if there was such vice, could not claim the protection of innocent purchaser.

It is true that the plaintiff denies the charge that he did not comply with the law in the taking of the acknowledgment and the trial court, taking into consideration the high character of the man, may not have believed Mrs. Mary Rowley's testimony, but nevertheless her testimony injected the issue into the case. Consequently, in the event the jury should find that Braly, the plaintiff, did not know of Rowley and his wife claiming the land, that there was no conspiracy, then the bank being an innocent purchaser and intervening between Rowe and the plaintiff, such issue need not be submitted, but, if the charge of conspiracy should be sustained by the jury, it would then become necessary for the jury to determine, and it would become a vital is-

sue, as to whether or not the plaintiff had complied with the law when he as notary public took the acknowledgment of Mary Rowley. In arriving at this conclusion, the jury should be first asked the question as to the conspiracy, and told that in the event they should answer that question in the negative, that they need not determine the question as to whether or not Braly complied with the requirements of the statute; but, if the jury should answer the question on the existence of the conspiracy in the affirmative, they should then be required to pass on the question of Braly's complying with such statute.

Under their proposition germane to the tenth assignment, the appellants contend that, where land is located in one county and suit is brought in another county than that in which the land lies to foreclose a vendor's lien evidenced by notes executed by the defendant in that suit, and payable in the county in which suit is brought and service of process is by nonresident notice, and there is no appearance by the defendant in that suit, and both the plaintiff and defendant are nonresidents, the court has neither venue nor jurisdiction, and a sale of the land under the judgment rendered in such cause conveys no title to the purchaser under the order of sale issued in said cause.

In the plaintiff's chain of title offered in evidence, there appears a deed from A. J. Rowley to one R. L. Moore, conveying the land in controversy. The consideration for such deed was an amount in cash and certain vendor's lien notes executed by Moore and payable to A. J. Rowley at Dalhart, Tex. The land conveyed by said deed was situated in Hartley county, Tex. The notes not being paid, suit was instituted by A. J. Rowley in the district court of Dallam county, Tex., against said Moore to foreclose such lien. Judgment was rendered against Moore for the amount of the notes and for a foreclosure of the lien, order of sale to Hartley county was issued, and the land sold thereunder to A. J. Rowley to satisfy such judgment.

As stated, the land was situated in Hartley county, Tex., and the suit was brought in Dallam county, Tex.

We have very carefully gone over the record and find nothing therein fixing the residence of Moore at the time of the execution of the deed to him by Rowley. At the time of the filing of the suit against him by Rowley, it appears that Moore was a resident of the state of Colorado. The record does not disclose the residence of A. J. Rowley at the time the deed was executed, neither is his residence made to appear at the time of the filing of the suit. The evidence as to that, only showing that Rowley did at one time live in Texas, but died in Maryland. Hence, the question raised by appellants is not presented in the record, but as the case will have to be reversed and such proof may have been made and inadvertently left out of the rec-

ord, we will dispose of the question, anticipating such to be the fact.

Subdivision 12, art. 1830, V. S. T. C. Stats. 1914, provides, where the suit is for foreclosure of a mortgage lien, suit may be brought in the county in which the property, subject to such lien, or a portion thereof, may be situated. Subdivision 5 thereof provides, where a person has contracted in writing to perform an obligation in any particular county, in which case suit may be brought either in such county or where the defendant has his domicile. Subdivision 3 provides, where the defendant, or all of several defendants, reside without the state or where the residence of the defendants is unknown, in which case the suit may be brought in the county in which the plaintiff resides.

Appellants insist that, since these provisions furnish no exception where both the plaintiff and defendant are nonresidents of the state, that resort must be had to the common law, and that under the common law suits to foreclose vendor's liens must be brought in the county where the land is located, and argue that venue in certain cases becomes so closely allied to the question of jurisdiction that it, in fact, becomes a question of jurisdiction of the court to entertain the subject-matter.

[12] We cannot concede that the articles cited contain no provision controlling the bringing of suits by nonresident against nonresident under certain conditions. These parties entered into a contract fixing the venue of any suit to be instituted by contracting for the payment of the notes in Dallam county. We know of no rule of law limiting the right of nonresidents to so contract with reference to their property in this state. An owner of land, who lives in New York, can make just as binding contracts for the disposition of his property in this state as can a resident of the state. If in such transaction he sees fit to enter into a contract fixing the place of the payment of obligations given him in payment for his land, and to contract for a purchase-money lien thereon to secure same, we know of no reason why such contract should be invalid in law.

[13] That venue is and can be fixed by contract, see Merchants' Reciprocal Underwriters v. First National Bank (Tex. Civ. App.; 192 S. W. 1098, 1102; Texas Moline Plow Co. v. Biggerstaff (Tex. Civ. App.) 185 S. W. 341, 342; Allis-Chalmers Mfg. Co. v. Joe Mitchell (Tex. Civ. App.) 283 S. W. 560 (not yet [officially] reported).

[14] The appellants complain of the remarks of the plaintiff in addressing the jury, to the effect that, if they wanted to find for him and the bank, they should answer the first six questions, "No." Such a statement to the jury was reprehensible and would ordinarily result in a reversal of the case in which it was made, but, as the case is reversed on other grounds, and this error will

not likely occur on another trial, we refrain from discussing it at length.

We have gone carefully over the record, have carefully considered all propositions and assignments, and, except as herein set out, have found no reversible errors. But for the error discussed and pointed out herein, we reverse and remand the judgment of the trial court.