## HENSLEY v. WACO DRUG CO.   (No. 3184.)

Court of Civil Appeals of Texas.   Amarillo.
May 15, 1929.

Rehearing Denied June 19, 1929.

Bean & Klett, of Lubbock, and A. K. Doss, of Abilene, for appellant.

Spell, Naman & Penland, of Waco, Douthit, Mays & Perkins, of Sweetwater, and Wilson & Randal and J. I. Kilpatrick, all of Lubbock, for appellee.

HALL, C. J.   The appellant, Hensley, sued the Waco Drug Company, a wholesale drug concern, J. H. and S. M. J. Benson, M. A. Halsey, and E. I. Hall, to recover damages in the sum of $10,000, alleging that the defendants had entered into an unlawful conspiracy and combination to cheat and defraud him and other parties, and had swindled him to the extent of $10,000.

The substance of plaintiff's allegations is:

That during the month of November, 1926, and long prior thereto, the defendants M. A. Halsey and E. I. Hall of Lubbock had been conducting a general retail drug and mercantile business in the town of Lubbock, under the firm name of Halsey Hall Drug Company, having assets, including merchandise, fixtures, and accounts of the value of about $53,000, with liabilities to the extent of approximately $40,000. That said firm had two stores in Lubbock, known as stores No. 1 and No. 2, respectively. That they were in failing condition, and financially unable to meet their liabilities as they matured. That they needed more capital, because their creditors were pressing them for settlement, some were bringing suits, and others threatening to sue. That the defendant, the Waco Drug Company, was one of the creditors of said firm to the extent of about $15,000. That the members of said firm were not on good terms, and were out of harmony in the conduct of the partnership business, were contemplating dissolution, and, as a consequence, the business was losing instead of gaining. That plaintiff resided several hundred miles from Lubbock, and was not acquainted with the status or financial condition of the Halsey Hall Drug Company other than through the representations made to him by the defendants herein. That, during the months of October, November, and December, 1926, the defendants entered into, and carried out, an unlawful conspiracy to swindle and defraud plaintiff and other creditors by representing, and causing to be represented, to plaintiff, directly and indirectly, that the Halsey Hall Drug Company had money and assets to the extent of $53,000; that it was a going concern, transacted a great volume of business, and had a flattering future. That both the said Hall and Halsey were capable and experienced businessmen, and their business had grown and increased to the point where they needed more capital and a reorganization. That it was the plan and purpose of Halsey Hall Drug Company to increase the capital and assets, and that they were seeking additional capital and men for that purpose. That such a plan and arrangement had been virtually closed, and was being consummated. That the Waco Drug Company and other defendants took an active and dominating part in the said scheme and conspiracy and representations, and aided and abetted and advised in the scheme and in the execu-

tion thereof with the fraudulent purpose of deceiving and injuring the plaintiff, and beating him out of his money and property, and without any intention of performing their promises or perfecting their plans. That the defendants communicated, advised, and acquiesced in the communications and misrepresentations to the plaintiff. That the defendants' purpose was to deceive plaintiff and other creditors as to the status of said business of the firm of Halsey Hall Drug Company, and in fact said defendants undertook and finally succeeded in getting plaintiff to advance them $10,000 in cash on or about the 8th day of December, 1926, when there was no Halsey Hall Drug Company in name or in fact.

There was no such partnership, and it had been terminated and practically ceased to do business, and was not a going concern. That the Waco Drug Company was wrestling with its problems, struggling to keep it alive, to give it a semblance of an existence, and keep its doors open and stave off bankruptcy proceedings until the aforesaid fraudulent scheme could be consummated. That on said date there were no assets or capital or other property belonging to Halsey Hall Drug Company. That said firm, although not known to the outside world, had terminated business, and made a transfer and assignment of all merchandise, fixtures, and accounts known as store No. 1 to a different concern, namely, Hall-Benson, Inc., and had transferred store No. 2 and all the merchandise and fixtures therein to one John W. Halsey, who was not known to have any business, any experience or property. That Hall-Benson, Inc., was, in fact, a sham, and did not have any property other than what it received from store No. 1. That it purported to have a paid-up capital of $20,000, including $10,000 cash paid in and on deposit in the Citizens' National Bank of Lubbock, but in truth and in fact such statement was a falsehood, in that there was no such sum of money in said bank, and no such sum had been paid in to said Hall-Benson, Inc. That in truth and in fact, instead of the capital of said firm being increased, it was decreased. Instead of it having been reorganized, it was disorganized and disbanded, all without the knowledge of plaintiff. That, with such affairs in such deplorable condition, the defendants, on or about the 8th or 9th of December, 1926, made the false and fraudulent representations hereinbefore alleged to plaintiff for the purpose of deceiving him, and thereby induced and persuaded plaintiff to lend to defendants the sum of $10,000 in cash, which defendants received and appropriated and converted to their own use and benefit with the intention of depriving plaintiff thereof. That the aforesaid transactions among defendants were secretly planned and carried out, so far as plaintiff was concerned. That defendants knew that the secret transfer of the property

of the Halsey Hall Drug Company, to others, as related, would deceive the public and future creditors, and it was done for that purpose. That defendants further secretly had an arrangement with the creditors of Halsey Hall Drug Company to place all their liabilities against store No. 1, and induced other creditors to allow the Waco Drug Company to hold its liabilities of approximately $15,000 as the sole debt of store No. 2, and, as a result thereof, the Waco Drug Company became a preferred and practically sole creditor of store No. 2, thereby placing the assets of the Halsey Hall Drug Company beyond the reach of its creditors. That the defendants knew, and should have known, that the secret handling of such properties, the organization of a fictitious corporation, the dissolution of the Halsey Hall Drug Company, and the dissipation of its assets, would work a fraud on innocent parties, like plaintiff, especially so at a time when said business was seeking more capital and trying to get a loan from plaintiff under such circumstances. That defendants knew that some, or all, of them were trying to procure an advance of $10,000 cash from plaintiff and that such efforts were and had been in contemplation and progress for more than a month. That the Waco Drug Company was exceedingly anxious to secure such money in order that it might obtain a preference, and that it actually obtained approximately $3,000 or more of said $10,000. That it was a party to said scheme, and participated therein, and, as soon as such money was fraudulently obtained, came to Lubbock and helped disburse it. That plaintiff was deceived and misled by their fraudulent representations and conduct, and believed that the business and the property of Halsey Hall Drug Company was what defendants said it was and what it appeared to be, otherwise he would not have advanced said $10,000 if he had known the facts as they existed. By reason of which he has been defrauded of $10,000, for which he prays judgment, together with interest thereon from December 9, 1926.

The case was tried to a jury. Hall filed no answer, and a judgment by default was rendered against him. The court directed a verdict in favor of all the other defendants. From a judgment entered in accordance therewith, plaintiff prosecutes this appeal.

By appropriate propositions, the plaintiff insists that the court erred in peremptorily instructing the jury against him, because there was evidence that the Waco Drug Company conspired with Hall to defraud plaintiff of $10,000 upon the false and fraudulent representations that Halsey Hall Drug Company was a going concern, and because the Waco Drug Company conspired with Hall by fraudulently concealing from plaintiff the fact that Halsey Hall Drug Company was not a going concern. It is further insisted that the court erred because there was evidence showing that the Waco Drug Company conspired

with Hall to make fraudulent representations as to the existence, standing, solvency, and ability of said drug company, and in concealing from plaintiff the fact that said drug company was not in existence.

After a careful review of the record, we are convinced that these contentions are sound and should be sustained. In cases growing out of fraud and conspiracy, great latitude is allowed the plaintiff in the introduction of testimony, because, in most cases, aside from circumstantial evidence, he must go into the camp of the enemy for proof of his allegations.

The appellee drug company was the largest creditor of the Halsey Hall Drug Company, and appellee's president and attorney were active in an effort to secure the payment of the amount due them. Hall testified that the whole scheme and plan for the dissolution of the Halsey Hall Drug firm, reorganizing and dividing its business and increasing the capital stock, was suggested and put through by appellee's attorney; that said attorney prepared the charter of the Hall-Benson corporation, which took over store No. 1 of the original firm, and wrote the affidavit which accompanied the charter, and in which it was stated that $10,000 in cash had been paid in. This affidavit was made by Hall and by the two Bensons. The affidavit further recited that this cash was in the bank. This fact was further stated in a circular letter sent to the various creditors of the original firm, and Hall testified that this letter was also prepared by appellee's attorney. The statement that $10,000 in cash had been paid in was based upon the fact that Hall had made a draft upon plaintiff, which was subsequently dishonored by the drawee. It further appears that appellee's attorney secured the approval of the charter by the secretary of state.

The dissolution of the original firm was effective November 23, 1926, but the assets of the two stores were separated three or four days prior to that time. The attorney testified that these transactions were all the result of a great many conferences he had with Halsey and Hall, and that he advised them largely as to the method that should be followed. In this connection, Hall testified that the president and attorney of the appellee company told him, after it was known that the $10,000 draft had been dishonored, that, if he did not get the money in ten or twenty-four hours, they would take over the business; that they knew he could raise the money, and his brother-in-law, the plaintiff, would pay it for him. He further stated that, under the threat of being thrown into bankruptcy and, in addition, of criminal prosecution, he did go and see the plaintiff and secured the money from him. The original firm had more than one hundred creditors, and, as a result of the circular letter, it appears that practically all these creditors, except the appellee,

were induced to accept the Hall-Benson Company as their debtor, while the remainder of appellee's indebtedness, after crediting the amount with the part of the $10,000 secured from plaintiff, was fixed against store No. 2, which had been transferred to a brother of Halsey.

It was further shown that, in order to induce the numerous other creditors to consent to a dissolution and reorganization, a certain per cent. of the amounts due them must be paid, and that the attorney of appellee assisted in making these payments and adjusting the matter with such creditors. Hall testified that appellee's representatives told him that, if he did not get the money and go through with the transaction which had been outlined and planned by the attorney, they would put him into bankruptcy, and that they also threatened him with criminal prosecution for signing an application for a charter which stated that $10,000 in cash had been paid into the firm when it was not there; that said attorney told him he could get the money from plaintiff, inasmuch as they had the assets there, and that, in the course of a few months, the stock of drugs could be cut down, and, if that would not pay the debt, that, when the Bensons paid in their subscription, they would have the money to repay plaintiff; that the attorney told him he could get the money and how he could get it; that he told Hall to tell plaintiff about the conditions of the business and its resources, what it was worth, and what it was doing, and that he could thereby get the money by telling plaintiff that the business was a going concern, and what the assets of the two stores amounted to.

Hall further testified that, acting upon such suggestions, he told plaintiff, after the two stores had been divided, the amount of the assets which were included in both stores, but did not tell him of the division and reorganization of the business. He stated he made it just as pretty and as nice as he could to plaintiff, and told him just exactly what the attorney had advised him to tell plaintiff.

Plaintiff testified that about the 7th or 8th of December, Hall called him over the phone with regard to the money, said that his firm had two stores at Lubbock doing business, and that they were figuring on reorganizing the business, with the intention of having the Bensons come into it, and that he wanted $10,000; that he did not give Hall an answer at that particular time, although he was called by Hall several times on the 7th, 8th, and 9th of the month; that, on the afternoon of the 9th, Halsey called him and asked if he was going to send the money. He stated that Hall had told him that the two stores had assets of $53,000, owing $37,000; that the business was increasing; that they were doing a good business, and were in need of additional capital; that the Bensons were coming into the business later on, which plaintiff understood to be the Halsey Hall Drug Com-

pany, and that on that basis he would be repaid. He further testified that he believed these representations, that he had been in Lubbock before then, had seen the two stores with Hall and Halsey apparently running them; that apparently they had a nice business, and the concern appeared to be prosperous, and the two stores were well located, but that, if he had known that the business was in a failing condition, and that there had been a dissolution and a separation of the two stores, he would not have advanced the money; that he went to Lubbock on the 10th of December, and left there on the night train, without ascertaining the real conditions, or that matters were otherwise than they had been stated to him in the telephone conversations; that he did not know there was a Hall-Benson, Inc., which had taken over two-thirds of the assets, nor did he know that John W. Halsey had taken over the other one-third. He had no knowledge that the business was in a failing condition or that their accounts were long past due or that suits had been filed, and did not learn the real facts until three or four months later, when his $10,000 was not repaid to him. When he failed to get his money, he came back to Lubbock, 175 miles distant, and made an investigation.

This testimony, together with other facts appearing in the record, we think required the trial court to submit the issues to the jury. Aside from the circumstances of strong probative force, the direct evidence of Hall and the attorney was enough to require the submission of the questions to the jury.

As stated in Oliver v. Huckins (Tex. Civ. App.) 244 S. W. 630:

"It is not necessary in order to support the finding of the Court to show by direct evidence that an agreement or a conspiracy had been entered into on the part of McDonald, Oliver and Evans, by which they undertook and agreed among themselves to make to the several plaintiffs and the intervener, false and fraudulent representations, such as were calculated to, and did, induce said parties to invest their funds in this enterprise; that is, such fact need not be shown by actual proof of when, how and through what conversations and agreements said conspiracy was formed. The existence of a conspiracy is generally a matter of evidence, deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful purpose in common between them. The existence of the agreement or joint assent of the minds need not be proved directly, but may be inferred by the Court or jury from other facts proved. It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose and to pursue it by common means. * * * Nor was it necessary to show that all the defendants were present at each of the times when fraudulent statements

and representations were made to the plaintiffs." Calcutt v. Gerig (C. C. A.) 271 F. 220, 27 A. L. R. 546; Conn. Mut. Life Ins. Co. v. Hillmon, 188 U. S. 208, 23 S. Ct. 294, 47 L. Ed. 447; Shaw v. Moon, 117 Or. 558, 245 P. 318, 45 A. L. R. 604; Rowley v. Braly (Tex. Civ. App.) 286 S. W. 241.

■ Appellant further contends that the court erred in refusing to permit him to ask E. I. Hall various leading questions inquiring whether appellee's attorney told the witness that he could get $10,000 from plaintiff by telling plaintiff that the Halsey Hall Drug Company was a going concern; that it had two stores with assets of approximately $53,000; that the money was needed because of the increase of business; and that it would be repaid just as soon as the Bensons came into the business with more capital.

If this constitutes error, it appears to be harmless in this particular case, because this testimony is made sufficiently plain, and the facts seem to have been elicited from the witness, notwithstanding the ruling of the court upon the right to ask leading questions.

Chief Justice Conner said, in Rockwell Bros. & Co. v. Hudgens, 57 Tex. Civ. App. 504, 123 S. W. 185:

"Complaint is also made of the action of the court in refusing to permit plaintiff in error to propound leading questions to the defendant * * * Hudgens. We think this was error. Notwithstanding he was introduced as a witness for plaintiff in error, * * * Hudgens was necessarily a hostile witness. His position in the case and his defense placed him in hostility to plaintiff in error, and the latter should, therefore, have been permitted to propound leading questions to him. See 1 Greenleaf on Evidence, § 435."

To the same effect is 8 Encyc. of Ev. 156; 8 Encyc. Pld. & Pr. 122.

In 40 Cyc. 2430, it is stated: "The discretion of the court is properly exercised in allowing counsel conducting the examination to ask leading questions in cases where it appears that the witness is unwilling to testify, reticent, evasive, or hostile, so as a party called as a witness for his adversary is necessarily hostile, he may be asked leading questions," etc.

■■ It is true that Hall stated that he was friendly to plaintiff, that they were brothers-in-law, and that he wanted to see plaintiff get his money, but it is also true that the transactions detailed above reflected upon his integrity, that he had been threatened with criminal prosecution for making a false affidavit in securing the charter, and that he was in an exceedingly embarrassing position. Under these circumstances, we are not prepared to hold that the action of the court, if error, in sustaining the objections to leading questions, is reversible. This is a matter largely within the discretion of the trial judge, and his action relative thereto will not be reversed, unless the discretion has been plainly

abused, to the injury of the complaining party. 5 Jones on Evidence (2d Ed.) 4554; Day v. Hunnicutt (Tex. Civ. App.) 160 S. W. 134.

The judgment is reversed, and the cause remanded.